## Brooks v. Dayton
*[Cite as 8 AOA 23]*

*Case No. 12164*
*Montgomery County, (2nd)*
*Decided December 21, 1990*

*Victor A Hodge, 367 W Second St, Suite 110, Dayton, Ohio 45402, for Plaintiff-Appellant.*

*Neil F. Freund and Lisa A. Hesse, 1800 Dayton Arcade Centre, One South Main Street, Dayton, Ohio 45402, for Defendant-Appellee, City Of Dayton.*

FAIN, J.

Defendant-appellant City of Dayton appeals from an award of attorneys' fees. We conclude that there is evidence in the record to support the award Of fees, based upon the theory that the City's conduct in denying plaintiff-appellee Anthony F. Brooks' claim for the return of $110, which had been seized as evidence, was vexatious or oppressive conduct, which constitutes a recognized exception to the "American rule" that attorneys' fees are not ordinarily recoverable.

Accordingly, the judgment of the trial court will be affirmed.

Two Dayton police officers, William Hill and Charles Tangeman, conducted an investigative stop, search, and seizure of an automobile owned by Brooks. Brooks was in the driver's seat of the car at the time of the search. Also present were his brother, Nathaniel, and his girlfriend, Bianca Pate.

In the course of the search, a quantity of crack cocaine was found in the car, as well as $110 in currency. Both officers testified that the currency was found on the floor of the car, beneath where Bianca Pate was sitting. The money was seized as evidence.

Both officers testified that Bianca Pate and Nathaniel Brooks, at the time of the search, denied that the $110 belonged to them. Officer Hill testified that when he asked Anthony Brooks where the money came from, Anthony Brooks said, "I got the money from Bianca." Hill said that he then confronted Bianca Pate, who was, by this time, in a different police cruiser, separate and apart from Anthony Brooks, and that Pate told him that she had never seen the money before in her life.

Officer Tangeman testified, more generally, that all three of the suspects, Anthony Brooks, Nathaniel Brooks, and Bianca Pate, had denied owning the money at the time of the search.

Anthony Brooks testified that the $110 belonged to him, having been given to him by Bianca Pate to use as an initial payment of rent for an apartment that they intended to lease after marrying. Brooks said that he told the officers that it was his money.

Although evidence was submitted to the grand jury, no indictments were returned, the grand jury evidently concluding that it was not possible to tie any individual particularly to the drugs found in the car.

Anthony Brooks testified that after his release from custody, he went to the Dayton

Police Department property room and asked for the return of the money. He testified that he was told to contact the drug unit, and that he was given a "run around" for about two months, in which the drug task force referred him to the property room, and, the property room referred him to the drug task force.

Eventually, Brooks retained a lawyer and made a formal written claim for the return of the money on the City's form. By this time, about eighteen months after the initial seizure, the money had been deposited into the City's General Fund.

The City denied Brooks' claim, and this action followed. This action commenced in the Small Claims Division of the Dayton Municipal Court, but the city moved to transfer the cause to the regular docket. In addition to seeking the return of the money, Brooks sought reasonable attorney fees.

The case was heard, and both parties presented evidence. When Brooks rested, his attorney made the following statement:

"Your Honor, with that we'll rest. We do have a claim here for attorney fees and such other release [sic, evidently the word "relief" was intended]. If the attorneys fee issue, I guess, would come up, I would ask to be able to do that by separate bifurcated proceedings since I'm the attorney and I would have to testify."

At the conclusion of the hearing, the trial court took the matter under advisement. Later, the trial court rendered judgment for Brooks, including "reasonable attorney fees," but reserved the amount of attorneys fees for determination at a later hearing. Thereafter, the City appealed. We dismissed that appeal, holding that the judgment entered in the trial court was not a final appealable order, since the amount of attorneys' fees was still to be determined.

After the dismissal of the intervening appeal, the trial court held a hearing on the award of attorneys' fees. At this hearing, Brooks' attorney testified concerning his services, the necessity of those services, his fees for those services, and the reasonableness of his fees. The City did not cross-examine.

After Brooks rested at this hearing, the City indicated that it had no evidence to present, but that it wished to argue the matter. The City argued that an award of attorneys' fees was not appropriate in the case. The trial court took the matter under advisement, and subsequently entered an award of attorneys' fees in the amount of $1,375, finding, among other things,

that "the City converted plaintiff's property to its own use without due process of law and acted in bad faith in denying plaintiff's claim to have the money returned to his possession."

From the award of attorneys' fees, the City appeals.

II

The City's sole Assignment of Error is as follows:

"THE TRIAL COURT COMMITTED PRE-JUDICIAL REVERSIBLE ERROR IN AWARDING ATTORNEY FEES TO PLAINTIFF-APPELLEE."

The City contends that:

(i) Brooks failed to establish his entitlement to an award of attorneys fees; and (ii) the City was deprived of the opportunity to present evidence and to make an argument on the issue of whether attorneys' fees should have been awarded.

There is evidence in the record from which the trial court could have found that the money was found in a car being driven by Anthony Brooks, in which the only other passengers were Bianca Pate and Nathaniel Brooks; that Anthony Brooks told the police officers, at the time the money was found, that it was his money; and that Nathaniel Brooks and Bianca Pate, the only other persons who could plausibly assert a possessory interest in the money, denied that it was their money. There was also evidence that Anthony Brooks, after having made numerous informal attempts to recover the money, made a formal written claim for the return of the money which was denied by the City. Finally, there was evidence that the City, after having forced Brooks to file a claim in the Small Claims Division, filed a motion to transfer, thereby forcing Brooks to pursue his claim on the regular docket of the Dayton Municipal Court.

We agree with the trial court that, based upon these findings of fact, the City had no colorable basis for refusing Brooks' claim for the return of his money at the time that he made a formal claim, in writing. The City's insistence, both at trial and earlier, that Brooks present additional evidence to establish his ownership of the money, besides his own assertion, when the only other persons that could plausibly have had a possessory interest in the money had both denied having any such interest, supports a finding that the position taken by the City in this matter was taken vexatiously, and with a purpose to oppress Brooks, who was required to expend attorneys' fees, in excess of ten times the

amount of the money seized, in order to recover the money.

Although the "American rule" is that ordinarily attorneys' fees are not recoverable, Ohio recognizes an exception to that rule where the losing party has engaged in bad faith, vexatious, wanton, obdurate or oppressive conduct. *Sorin v. Board of Education* (1976), 46 Ohio St. 2d 177, 183.

In our view, there is evidence in this record to support the trial court's conclusion that the City acted vexatiously and oppressively in refusing to return Brooks' money after he had made a formal written claim for its return.

The City contends that it never had the opportunity to be heard with respect to the attorneys' fee issue. The record does not portray that error. Although the trial court's entry of December 12, 1989, from which the initial appeal was taken, determined that attorneys' fees should be awarded, that was not a final appealable order. Therefore, the propriety of an award of attorneys' fees was still subject to reconsideration at the hearing of April 9, 1990. At that hearing, the City argued that attorneys' fees should not be awarded, but evidently concluded that it could support that argument with the evidence that had been submitted in the prior hearing. There is no indication in the record that the City was prevented from presenting additional evidence, or additional arguments. Furthermore, the City, while contending that it never had the chance to present arguments or evidence on the issue of the propriety of an award of attorneys fees, has not pointed to any evidence or arguments that it would have made, had it had the opportunity to do so.

We conclude that the record fails to portray that the City was prevented from presenting any evidence or arguments that it might have wanted to present concerning the propriety of an award of attorneys' fees, before the award of fees on April 3, 1990.

The City's sole Assignment of Error is overruled.

### III

The City's sole Assignment of Error having been overruled, the judgment of the trial court will be affirmed.

WILSON and BROGAN, J.J., concur.