JOHNSON, APPELLANT, *v.* PRESTON, DIRECTOR OF HIGHWAYS, APPELLEE.

[Cite as Johnson v. Preston, Dir. of Hwys., 12 Ohio St. 2d 100.]

(No. 41071—Decided December 27, 1967.)

*Mr. Elmer C. Myers* and *Mr. Alfred H. Johnson*, for appellant.

*Mr. William B. Saxbe*, attorney general, and *Mr. I. Charles Rhoads*, for appellee.

SCHNEIDER, J.  It appears that on January 7, 1964, in an appeal on law and fact, the Court of Appeals for Medina County (1 Ohio App. 2d 62) ordered the Director of Highways "enjoined permanently from appropriating the lands of Flora L. Johnson * * * for use as a rest area."

The instant proceeding was commenced in that court on February 17, 1967, by a motion for a citation against the di-

rector for contempt of the injunction by reason of two acts on his part, as set forth in the affidavit supporting the motion: (1) entering the property to make a survey; and (2) instituting, on May 17, 1966, an action in the Common Pleas Court of Medina County to appropriate the property for a rest area. (Although that purpose is not specifically mentioned in the affidavit, nor does it appear in the record, the argument of appellant is pregnant with the admission that such was, in fact, the purpose of the appropriation.)

The appellant concedes that the Court of Appeals was entirely correct in finding that the director obviously did not violate its order in entering the lands to make a survey. In so doing, he was patently authorized by Section 5517.01, Revised Code, and he was previously restrained *only* from taking the lands *as a rest area.*

However, both parties apparently disagree with the finding of the Court of Appeals that the "legality" of the pending appropriation proceeding was not before it in this cause. So, to a degree, do we. Therefore, in affirming the judgment of that court, we will attempt to terminate the controversy between the parties on the issue which is before us, as the court below should have done.

In the opening paragraph of the order of January 7, 1964, the court found "that no statutory provision exists whereby the Director of Highways is vested with authority to appropriate property adjacent to the right of way of a limited-access highway for use as a rest area." Thus, there is no need to search collaterally for the premise of the injunction. It carries that within its terms as well as the basis of its own extinction, *i. e.,* subsequent legislative action permitting the Director of Highways to appropriate lands for a rest area. That has been accomplished by the amendment of Section 5501.11, Revised Code, effective October 30, 1965 (131 v. 1257, 1735).

It has been announced, correctly we think, that a perpetual injunction merely enjoins the defendant from doing the act complained of, provided the conditions and the rights of the parties remain the same; and that, where, after the entry of the injunction, the rights of the parties have changed, the injunction may thereby be nullified and a violation thereof may

not constitute a contempt of court. *State, ex rel. Snepp,* v. *Michael,* 12 Ohio Dec. 674, 676. Nor can an injunction be elevated above its own terms or the circumstances from which the court derived its jurisdiction to decree it in the first instance. See *Ohio Society of Professional Engineers* v. *Hulslander,* 86 Ohio App. 497, 502.

Certainly, if the situation here were reversed, that is to say, if the state or a local agency thereof had obtained an injunction against the use of *appellant's* lands in violation of a statute or ordinance enacted in the exercise of the sovereign power, we cannot imagine appellant conceding the vitality of that injunction to extend beyond the repeal of the statute or ordinance (cf., however, *Harford* v. *Degenhart,* 26 Ohio Law Abs. 183), and that she could be held thereafter for contempt in acting contrary to its terms merely because she did not first procure its vacation or modification as a consequence of the repeal.

In affirming the judgment in this case on the basis of the foregoing statements, we necessarily decide that the viability of an injunction may be decided in a proceeding seeking a citation for contempt thereof, and that the failure to apply for a vacation or modification of the injunction will not bar the defendant from showing a change of law or fact to excuse or justify his acts contrary to the literal provisions thereof. However, we should raise the caveat that, in so proceeding to act, the defendant does so at his peril and with an assumption of the risk that his duties as a result of, and the plaintiff's rights in, the injunction have not in law or in fact been altered. See *State, ex rel. Beil,* v. *Dota,* 168 Ohio St. 315.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.

MATTHIAS, J., concurring. This court held in *State, ex rel. Beil,* v. *Dota,* 168 Ohio St. 315, that a temporary injunctive order must be obeyed, even if erroneous, unless modified or dissolved. In the instant case, this court recognizes that a permanent injunction may be vitiated by a subsequent change of law. Both

rules of law came to be formulated in the context of contempt proceedings. While approving of the ruling in each of the two cases, I cannot condone the wisdom of a party risking being held in contempt of a court decree where there is any avenue open to him by which to avoid that possibility.

The Supreme Court of the United States recently affirmed the criminal contempt conviction of several street demonstrators who chose to violate the clear language of a temporary injunction requiring them to refrain from, among other things, "* * * engaging in, sponsoring, inciting or encouraging mass street parades or mass processions or like demonstrations without a permit * * * congregating on the street or public places into mobs * * *." *Walker* v. *City of Birmingham*, 388 U. S. 333, 18 L. Ed. 2d 1210, 87 S. Ct. 1824. Mr. Justice Stewart made the following remarks in the majority opinion: "The generality of the language contained in the Birmingham parade ordinance upon which the injunction was based would unquestionably raise substantial constitutional issues concerning some of its provisions. * * *

"The breadth and vagueness of the injunction itself would also unquestionably be subject to substantial constitutional question. *But the way to raise that question was to apply to the Alabama courts to have the injunction modified or dissolved.* * * *

"* * *

"This case would arise in quite a different constitutional posture if the petitioners, before disobeying the injunction, had challenged it in the Alabama courts, and had been met with delay or frustration of their constitutional claims. But there is no showing that such would have been the fate of a timely motion to modify or dissolve the injunction. * * * The injunction had issued *ex parte; if the court had been presented with the petitioners' contentions, it might well have dissolved or at least modified its order in some respects.* * * *

"* * *

"The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives * * * respect for judicial process

is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." (Emphasis supplied.)

In Ohio, if an injunction is temporary and prior to a hearing on a permanent injunction a motion to vacate or modify is available as a matter of statutory right. Section 2727.14, Revised Code. If an injunction is permanent and post litem, but the conditions upon which the mandate was issued have materially changed, the court of issuance has inherent power to modify or vacate its decree upon application by the party enjoined. *Degenhart* v. *Harford*, 59 Ohio App. 552; annotation, 136 A. L. R. 765, and cases cited therein.

The defendant in *State, ex rel. Beil,* v. *Dota, supra* (168 Ohio St. 315), challenged the authority of a temporary injunction by disobedience of its clear mandate, when he should have moved the issuing court for a modification of the decree. A showing that, upon proper application, the defendant would have been entitled to a reformation of the court's original mandate was insufficient to excuse his conviction for contempt. In the instant case, the new statutory authority the General Assembly granted to the Director of Highways to appropriate real property adjacent to a limited access highway for a rest area would have been clear reason for the Court of Appeals to dissolve its permanent injunction upon petition by the director. Instead, the director has relied upon the new law, defensively and successfully, as cause why he should not be held in contempt. This writer is of the opinion that, while there are sufficient distinctions between the *Beil case* and the instant case to warrant the respective rulings in each, the similarities between the two cases point up the unwise judgment of an individual to risk being held in contempt where an alternative is present.

The contempt power of the courts is a necessary concomitant to the effective administration of justice. No man should unnecessarily invite its use against himself. He does so at his peril.