[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 278.]

THE STATE EX REL. BEDNAR, APPELLEE AND CROSS-APPELLANT, *v*. CITY OF

NORTH CANTON ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *State ex rel. Bednar v. N. Canton*, 1994-Ohio-89.]

*Municipal corporations—Civil service—Police officers—Mayor of chartered city*
*required to fill vacancy of lieutenant's position, when—Determining*
*eligibility for back pay for wrongful failure to promote.*

(No. 93-628—Submitted March 1, 1994—Decided May 11, 1994.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Stark County, No.

CA-9047.

_____

{¶ 1} Greg Bednar, appellee and cross-appellant, was a police officer in the city of North Canton. On or about July 5, 1990, he was certified second on the eligibility list for the position of lieutenant after having taken an examination certified by the North Canton Civil Service Commission. That eligibility list was extended until July 5, 1992. On or about June 4, 1991, the person certified first on the eligibility list was promoted to lieutenant, leaving Bednar first on the eligibility list. On or about June 2, 1992, a lieutenant retired from the force. Thereafter Bednar's name was certified to the "appointing authority" for promotion, but the mayor did not appoint Bednar to the position because he believed that the vacancy could be filled at his discretion.

{¶ 2} Bednar filed a complaint for a writ of mandamus in the Court of Appeals for Stark County seeking to compel the city and its officials, appellants and cross-appellees (the "city"), to appoint him to the lieutenant's position and also seeking back pay to June 2, 1992 and attorney fees. The court of appeals allowed the writ of mandamus compelling Bednar's appointment, but denied his request for back pay and attorney fees.

{¶ 3} The cause is before the court upon an appeal and cross-appeal as of right.

_____

*Roetzel & Andress* and *Thomas A. Treadon*, for appellants and cross-appellees.

*Schulman, Mestel & Burick Co., L.P.A.*, and *Allen Schulman, Jr.*, for appellee and cross-appellant.

_____

***Per Curiam.***

{¶ 4} For the following reasons, we affirm the judgment of the court of appeals in part and reverse it in part.

{¶ 5} R.C. 124.44 states in part:

"Whenever a vacancy occurs in the position above the rank of patrolman in a police department, * * * [and there is an eligibility] list, the [civil service] commission shall, where there is a vacancy, immediately certify the name of the person having the highest rating, and the appointing authority shall appoint such person within thirty days from the date of such certification."

{¶ 6} Bednar relies on this statute to mandate his appointment. The city contends that its home rule authority under Section 3, Article XVIII, Ohio Constitution, and implemented by Section 1.02 of its charter and Ordinance No. 21-92, permits it to deviate from R.C. 124.44. According to the city, Section 1.02 of the charter states:

"The municipality shall have all powers of local self-government and home rule and all powers possible for a municipality to have under the Constitution of the State of Ohio. The municipality shall have all powers that now or hereafter may be granted to municipalities by the laws of the State of Ohio. All such powers shall be exercised in the manner prescribed in this charter, or if not prescribed therein, in such manner as shall be provided by ordinance of council."

{¶ 7} Ordinance No. 21-92 provides in part:

"*Authorized Manpower:*

"That the total number of persons to be employed by the Police Department and the classifications set forth herein of the Police Department of the City of North Canton, Ohio, be, and it shall not exceed the following:

"* * *

"Police Lieutenant 6[']"

{¶ 8} The city also relies on *State ex rel. E. Cleveland Assn. of Firefighters v. E. Cleveland* (1988), 40 Ohio St. 3d 222, 533 N.E.2d 282. In that case, home rule authority prevailed over R.C. 124.46, which required the appointment of the examinee with the highest examination grade in case of a vacancy in the rank of lieutenant on the fire department. We held that East Cleveland's "* * * express charter language enables the city to exercise local self-government powers in a manner contrary to state civil service statutes. Charter of the city of East Cleveland, Sections 28-31." *Id.* at 224, 533 N.E.2d at 284.

{¶ 9} In the instant case, the court of appeals found that Ordinance No. 21-92 lacked the specificity that was required by *State ex rel. Bardo v. Lyndhurst* (1988), 37 Ohio St.3d 106, 524 N.E.2d 447. In fact, *Bardo* required specificity in the charter itself to invoke home rule authority:

"The rule of charter supremacy applies only where the conflict appears by the express terms of the charter and not by mere inference. *State, ex rel. Ryan, v. Kerr* (1932), 42 Ohio App. 19, 12 Ohio Law Abs. 292, 181 N.E. 546, affirmed (1932), 126 Ohio St. 26, 183 N.E. 535. In the absence of express language in a charter showing that it conflicts with the statutes, it is the duty of the courts to harmonize the provisions of the charter with the provisions of the statute relating to the same matter. *State, ex rel. Votaw, v. Matia* (1932), 43 Ohio App. 279, 12 Ohio Law Abs. 414, 183 N.E. 122, affirmed on other grounds (1932), 125 Ohio St. 598, 183 N.E. 533. While the express language of a charter may abrogate or nullify a

state civil service law, such a result cannot be accomplished by a charter provision delegating authority to a municipal commission to nullify the law by adoption of a rule. *Id.* at 281, 12 Ohio Law Abs. at 415, 183 N.E. at 123." 37 Ohio St. 3d 109, 524 N.E.2d at 450.

{¶ 10} However, the East Cleveland Charter, which we found sufficient to authorize the ordinance that superseded the state statute in that case, is more specific than Section 1.02 of the North Canton Charter, quoted above, only insofar as it reserves home rule authority specifically directed to the classified service:

"SECTION 30. APPOINTMENTS AND REMOVALS.

"* * *

"Except as herein otherwise provided, ordinances shall be passed to fix the powers and duties of the Civil Service Commission and to prescribe rules and regulations governing the classified service."

{¶ 11} Thus, the East Cleveland and North Canton Charters differ in that the former reserved home rule authority specifically directed to ordinances affecting the classified service whereas the latter reserved such authority generally directed to all powers of local self-government.

{¶ 12} Appointment of police officers is a "'matter of local self-government'" delegated to all municipal corporations by Section 3, Article XVIII, Ohio Constitution. *State ex rel. Canada v. Phillips* (1958), 168 Ohio St. 191, 194, 5 O.O.2d 481, 483, 151 N.E.2d 722, 725, and paragraph one of the syllabus. Since a municipal corporation's authority over matters of local self-government derives directly from the Constitution, we find it competent for the people of a municipal corporation to reserve to their legislative authority any residual home rule powers not exercised directly in the charter. Such a reservation makes practical sense. Many "matters of local self-government" are, in fact, matters of detail and procedure that are out of place in a charter, which is comparable to a local

4

constitution. *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245,253, 140 N.E. 595, 597.

{¶ 13} Moreover, we perceive no legal difference between a specific reservation of such power, as in the East Cleveland Charter, and a general reservation, as in the North Canton Charter. Accordingly, we hold that Section 1.02 of the North Canton Charter sufficiently reserved home rule authority to permit enactment of an ordinance at variance with R.C. 124.44, and we limit *Bardo*, *supra*, to cases involving delegation of authority to municipal civil service commissions. Cf. *Treska v. Trumble* (1983), 4 Ohio St.3d 150, 4 OBR 394, 447 N.E.2d 1283 (state statute [R.C. 124.32] prescribing layoff procedures prevails over conflicting ordinance of noncharter municipality).

{¶ 14} The question remains whether Ordinance No. 21-92 does, in fact, contradict R.C. 124.44. The ordinance merely states that the police department shall not exceed six lieutenants; R.C. 124.44 prescribes mandatory procedure to be followed when a vacancy occurs in the rank of lieutenant. *East Cleveland* involved such an ordinance, but we permitted variation from the statute in part because of another ordinance that plainly stated:

"The City Manager shall have full authority to leave positions vacant or to combine the duties of two positions under a single employee whenever he deems it in the best interest of the City." 40 Ohio St. 3d at 224, 533 N.E.2d at 285, fn. 2.

{¶ 15} By itself, an ordinance limiting the force to a certain number of lieutenants does not sufficiently indicate an intent to alter the mandatory appointment procedures set forth in R.C. 124.44. See *Zavisin v. Loveland* (1989), 44 Ohio St. 3d 158, 541 N.E.2d 1055, in which we held in the syllabus:

"The procedure for promotion provided in R.C. 124.44 is mandatory upon the occurrence of a vacancy in a position above police patrolman, and the vacant position must be filled by appointment before it is abolished pursuant to R.C. 124.37, which presupposes the existence of an incumbent."

**{¶ 16}** In the instant case, it appears from the second sentence of Section 1.02 of the North Canton Charter that state law prevails when the charter and ordinances are silent. Ordinance No. 21-92 does not contradict the appointment procedures prescribed by R.C. 124.44, and, according to *Zavisin*, such procedures are "mandatory upon the occurrence of a vacancy." Therefore, in the instant case Bednar was entitled to be appointed pursuant to such statute, and the decision of the court of appeals so holding is affirmed.

**{¶ 17}** On cross-appeal, Bednar first claims that he is also entitled to back pay with interest, regardless of whether the city acted in bad faith. However, if bad faith is required, he argues that the city is guilty of bad faith. The court of appeals denied back pay, and thus interest, finding no bad faith by the city.

**{¶ 18}** Bednar cites cases in which a public employee is reinstated following a wrongful dismissal, in which we have allowed a mandamus action for back pay, "provided the amount recoverable is established with certainty." *State ex rel. Martin v. Columbus* (1979), 58 Ohio St. 2d 261, 12 O.O. 3d 268, 389 N.E.2d 1123, paragraph one of the syllabus. We have also allowed interest on back pay in such cases at the statutory rate. *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, at 367-368, 21 O.O. 3d 228, at 231-232, 423 N.E.2d 1099, at 1102-1103. However, when, in *State ex rel. Gibbons v. Cleveland* (1984), 9 Ohio St.3d 216, 9 OBR 526, 459 N.E.2d 892, several Cleveland police officers sought writs of mandamus for back pay, claiming they were wrongfully denied promotion to sergeant, we reversed the judgment of the court of appeals and denied the writ, holding that mandamus "does not lie to compel the granting of benefits conferred by the civil service laws unless it has been established that the employee was appointed to the civil service position in question." 9 Ohio St. 3d at 217, 9 OBR at 527, 459 N.E.2d at 893.

**{¶ 19}** Then, in *Morgan v. Cincinnati* (1986), 25 Ohio St. 3d 285, 25 OBR 337, 496 N.E.2d 468, we "limited" *Gibbons*, but in doing so prescribed a different

test for granting back pay than was used in *Martin* and *Crockett*. *Morgan*, like this case, involved failure to promote pursuant to R.C. 124.44. First, we found bad faith on the part of the city. We distinguished *Gibbons* on the basis that there the city denied promotion based on certain ordinances later declared unconstitutional, whereas in *Morgan* Cincinnati simply violated R.C. 124.44 without justification. We then held in the syllabus:

"Where a civil service employee shows that a promotion to which he was entitled was delayed as the result of actions taken by a municipality in violation of R.C. 124.44, that employee is entitled to recover back pay and seniority for the period of the delay."

{¶ 20} In his concurring and dissenting opinion, Justice Holmes noted that although the court appeared to rely on the city's bad faith in reaching its decision, the syllabus did not reflect that reliance. *Id.* at 292, 25 OBR at 342, 496 N.E.2d at 474. The same problem arose in *Hungler v. Cincinnati* (1986), 25 Ohio St.3d 338, 25 OBR 392, 496 N.E.2d 912, announced the same day as *Morgan*. *Hungler* also involved failure to promote when vacancies in the lieutenant position occurred. The city failed to promote the top candidates on the eligible list pursuant to R.C. 124.44 and instead concocted a demotion-repromotion scheme that ultimately resulted in the lieutenants' positions being abolished rather than filled through promotion. The top persons on the eligibility list sought promotion and back pay via declaratory judgment in the common pleas court. That court granted them relief, but the court of appeals reversed. We reversed and reinstated the judgment of the common pleas court. While not finding "bad faith" *per se*, we nevertheless condemned city procedure:

"The machinations employed by the city in the instant case disrupted the stability and predictability of the civil service system on which appellants relied. Although the city expresses its concern for the seniority system, the demotion-repromotion shell game used to abolish the two lieutenant's positions was in

contravention of R.C. 124.37 and adversely affected appellants' seniority rights by delaying or denying their promotions. In essence, the city, by abolishing these positions in an unlawful manner, was tinkering with the civil service promotional system as well as R.C. 124.37. The abolishment of a classified civil service position above the rank of patrolman in the police department for lack of work or funds, or for causes other than those outlined in R.C. 124.34, must be accomplished in conformance with R.C. 124.37. Because the city did not accomplish the abolishment of these two lieutenant's positions in accordance with R.C. 124.37, the elimination of these positions was unlawful and therefore void." 25 Ohio St. 3d at 344, 25 OBR at 397, 496 N.E.2d at 917.

{¶ 21} We then compared the case with *Morgan* and found them similar in that each city had "actively violated state civil service laws." 25 Ohio St. 3d at 289, 25 OBR at 340, 496 N.E.2d at 472; 25 Ohio St. 3d at 345, 25 OBR at 398, 496 N.E.2d at 918.

{¶ 22} Having examined these two classes of cases—wrongful dismissals and wrongful failure to promote—we now prescribe a single test to determine eligibility for back pay--the test now applicable to wrongful dismissals. The relator must first establish that the dismissal or denial of promotion was wrongful. In wrongful-failure-to-promote cases, this proof may be in the mandamus action itself. Then, the relator must prove a clear right to relief by establishing the amount due with certainty. *Martin* and *Crockett*, *supra*. If certainty is established, then prejudgment interest is allowed as a matter of law. *Crockett* at 367-368, 21 O.O.3d at 231-232, 423 N.E.2d at 1102-1103; *State ex rel. Dean v. Huddle* (1976), 45 Ohio St.2d 234,236, 74 O.O.2d 378, at 379, 344 N.E.2d 138, at 140.

{¶ 23} By standardizing the burden of proof in these cases, we do not suggest that mandamus may be resorted to for proof of wrongful dismissal where appeal is an adequate remedy at law in such cases. See, *e.g.*, *State ex rel. Shine v. Garafalo* (1982), 69 Ohio St.2d 253, 23 O.O.3d 251, 431 N.E.2d 680.

**{¶ 24}** Accordingly, we affirm the judgment of the court of appeals requiring that Bednar be promoted to lieutenent, effective July 2, 1992, the date that is thirty days after the date on which Bednar's name should have been "immediately" certified to the mayor, and hence the latest date for the mayor to make the promotion pursuant to R.C. 124.44.

**{¶ 25}** We also reverse the judgment of the court of appeals insofar as it denied a writ for back pay with statutory interest because Bednar failed to establish bad faith by the city. However, because the record shows that Bednar did not establish the amount of back pay with certainty in the court of appeals, we remand for further proceedings in accordance with this opinion. *State ex rel. Colangelo v. McFaul* (1980), 62 Ohio St.2d 200, 16 O.O. 3d 239, 404 N.E.2d 745.

**{¶ 26}** Finally, we concur with the court of appeal's disallowance of attorney fees. We find no bad faith, vexatious, wanton, obdurate, or oppressive conduct necessary to allow attorney fees, absent a statute allowing them. *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.* (1976), 46 Ohio St.2d 177, at 183, 75 O.O.2d 224, at 227, 347 N.E.2d 527, at 531.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK and PFEIFER, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., concur in judgment only.

———————————