OPINION
{¶ 1} Appellant, city of Willoughby ("City"), appeals from two judgments of the Lake County Common Pleas Court, finding in favor of appellee, Great Plains Exploration, LLC ("Great Plains") on Great Plains' motion for temporary restraining order and complaint for declaratory judgment and injunctive relief.
 {¶ 2} This case arises out of a proposed contract for the drilling of gas on city owned property at Lost Nation Airport. Great Plains is an Ohio limited liability company in the business of oil and gas drilling. The City is a chartered municipality. On November 1, 2005, the City adopted Resolution No. 2005-167 ("Resolution"), authorizing the mayor to enter into a lease with Black Gold Exploration, Inc. for gas well drilling on city owned property at the Lost Nation Airport. The lease was not let nor advertised pursuant to the advertising and competitive bidding requirements of R.C. 721.03. On the same day, Great Plains, a competitor of Black Gold Exploration, filed a motion for temporary restraining order, a motion for preliminary and permanent injunctive relief, and a complaint for declaratory judgment. Great Plains was seeking an opportunity to bid on the lease and claimed that the City must follow the requirements of competitive bidding pursuant to R.C.721.03. The court issued a temporary restraining order on November 2, 2005.
 {¶ 3} The trial court consolidated the hearing of the application for preliminary injunction and the trial of the action on the merits on December 16, 2005.
 {¶ 4} On January 26, 2006, the court entered judgment in favor of Great Plains and issued a permanent injunction that: "[t]he City * * * and those person[s] in active concert or participation with them are restrained and enjoined from proceeding with or allowing any work pursuant to any contract for the lease and drilling of certain property owned by the City * * * at the Lost Nation Airport without first complying with R.C. 721.03." The court further declared the City's action in failing to advertise in accordance with this statute to be unlawful and invalid.
 {¶ 5} It is from the judgment and the court's earlier granting of the temporary restraining order that the City filed a timely notice of appeal, asserting the following assignments of error:
 {¶ 6} "[1.] The trial court erred in granting appell[ee]-plaintiff preliminary and injunctive relief and finding that the City of Willoughby is required to comply with the competitive bidding requirements of R.C. 721.03.
 {¶ 7} "[2.] The trial court erred in finding that there must be an express charter provision to override or supersede R.C. 721.03.
 {¶ 8} "[3.] The trial court erred in restraining and enjoining the City of Willoughby from proceeding with or allowing any work pursuant to any contract for the lease and drilling of certain property owned by the City of Willoughby at the Lost Nation Airport without first complying with R.C. 721.03."
 {¶ 9} The City's first and second assignments of error relate to the court's granting of injunctive relief. Thus, we shall address them in a consolidated fashion.
 {¶ 10} The issuance of an injunction is a matter solely within the discretion of the trial court and a reviewing court will not disturb the trial court's judgment absent a clear abuse of discretion. Danis ClarkcoLandfill Co. v. Clark Cty. Solid Waste Mgt. Dist, 73 Ohio St.3d 590,1995-Ohio-301, paragraph three of the syllabus; Bd. of Trustees, HowlandTwp. v. Dray, 11th Dist. No. 2004-T-0137, 2006-Ohio-3402, at ¶ 29. An abuse of discretion consists of more than an error of law or judgment. Rather, "* * * it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. * * *" Berk v. Matthews (1990), 53 Ohio St.3d 161,169.
 {¶ 11} In determining whether to grant an injunction, a court must look at the "* * * character of the case, the particular facts involved, and factors relating to public policy and convenience." Cementech, Inc.v. Fairlawn, 109 Ohio St.3d 475, 2006-Ohio-2991, at ¶ 10. A party seeking a preliminary injunction bears the burden of establishing, by clear and convincing evidence, that: "(1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) the plaintiff will suffer irreparable injury if the injunction is not granted; (3) no third parties will be unjustifiably harmed if the injunction is granted; and (4) the public interest will be served by the injunction." Miller ex rel. Trumbull Industries, Inc. v. Miller, 11th Dist. No. 2004-T-0150, 2005-Ohio-5120, at ¶ 10, citing Procter Gamblev. Stoneham (2000), 140 Ohio App.3d 260, 267. "No one factor in the analysis is dispositive, but the four factors must be balanced as is characteristic of the law of equity." Id.
 {¶ 12} "The test for the granting or denial of a permanent injunction is substantially the same as that for a preliminary injunction, except instead of the plaintiff proving a `substantial likelihood' of prevailing on the merits, the plaintiff must prove that he has prevailed on the merits." Miller ex. rel Trumbull, at ¶ 11, citing Ellinos, Inc.v. Austintown Twp. (N.D. Ohio 2002), 203 F. Supp. 2d 875, 886;Edinburg Restaurant, Inc. v. Edinburg Twp. (N.D. Ohio 2002),203 F. Supp. 2d 865, 873. (Emphasis sic.)
 {¶ 13} In the case sub judice, the temporary restraining order and preliminary injunction have been preempted by the permanent injunction, and for this reason, the portion of the City's assignment of error is moot. See D N Dev., Inc. v. Schrock, 5th Dist. No. 89AP080066, 1990 Ohio App. LEXIS 1427, at 6.
 {¶ 14} The City challenges the court's determination that Great Plains Exploration prevailed in proving that the City was required to comply with R.C. 721.03. The City argues that by adoption of the Resolution, it properly exercised its authority of home rule to supersede the mandatory state statute bidding requirements of R.C. 721.03.
 {¶ 15} R.C. 721.03, provides, in pertinent part, that: "[n]o contract * * * for the sale or lease of real estate belonging to a municipal corporation shall be made unless authorized by an ordinance, approved by a two-thirds vote of the members of the legislative authority of such municipal corporation, and by the board or officer having supervision or management of such real estate. When the contract is so authorized, it shall be made in writing by such board or officer, and * * * only with the highest bidder, after advertisement once a week for five consecutive weeks in a newspaper of general circulation within the municipal corporation. * * *"
 {¶ 16} The Home Rule Amendment to the Ohio Constitution, found in Section 3, Article XVIII, provides, in pertinent part: "[municipalities shall have authority to exercise all powers of local self-government * * * [.]"
 {¶ 17} Article II of the Willoughby Charter, titled "The Power of the Municipality" provides as follows: "[t]he City of Willoughby shall have all powers of local self-government now or hereafter granted to municipalities by the Constitution and the laws of the State of Ohio.All such powers shall be exercised in the manner prescribed by thisCharter, and if not prescribed herein then in such manner as Council may determine or as now or hereafter may be prescribed by law or by amendment to this Charter." (Emphasis added.)
 {¶ 18} Section III-7 of the city charter provides in pertinent part: "[t]he Council shall by ordinance make provision for:
 {¶ 19} "* * *
 {¶ 20} "(f) The advertising and award of contracts * * *[.]" (Emphasis added.)
 {¶ 21} In its assignments of error, the City cites cases involving the determination of municipality home rule. In State ex rel. Bardo v.Lyndhurst (1988), 37 Ohio St.3d 106, the Supreme Court of Ohio considered whether a municipality had properly reserved home rule in its charter and properly exercised that intent through an ordinance. The court ruled that a city charter must expressly state that it is in conflict with and supersedes state statutes before invoking home rule authority by the enactment of an ordinance. Id. at 109. In State ex rel.Bednar v. N. Canton, 69 Ohio St.3d 278, 1994-Ohio-89, the court again addressed whether a municipality had established a reservation of home rule and properly exercised it through enactment of an ordinance. TheBednar court held that a general reservation of power sufficiently reserved home rule authority to permit enactment of an ordinance at variance with the applicable state statute. Id. at 281. The court limited its earlier decision in Bardo, to "* * * cases involving delegation of authority to municipal civil service commissions." InBednar, once it determined that a proper reservation of home rule authority existed, the court proceeded to address whether the ordinance was a sufficient enactment or exercise of home rule authority. Id. at 281.
 {¶ 22} In Natl. Elec. Contrs. Assn., Inc. v. Mentor,108 Ohio App.3d 373, this court also applied the two step analysis of Bardo and followed in Bednar, when we concluded that the city of Mentor, by its Charter, reserved the power of home rule, but failed to exercise it properly. Id. at 379-380.
 {¶ 23} Upon the review of these cases, it is clear that the determination of whether a municipality has superseded a state statute by its home rule power involves a two-part test: (1) whether the municipality has through its charter set forth a reservation of intent to exercise home rule power and (2) whether the municipality has properly exercised that power.
 {¶ 24} An examination of the City's charter reveals intent to exercise home rule powers. Thus, through its charter, the City has reserved its home rule power to authorize the city council to supersede state law in areas of bids solicitation and advertising for contract awards. Contrary to the City's argument, the trial court did not find that the City was required to expressly enunciate the home rule powers reserved perBardo, supra. Instead, the court found that the language of the Charter expressed "* * * intent to exercise home rule powers." Thus, the crux of this appeal involves the second factor of the analysis discussed above.
 {¶ 25} The City contends that the Resolution was a proper exercise of its power of home rule. For the reasons that follow, we disagree.
 {¶ 26} Initially, this court must address a matter not considered by the parties' briefs or by the trial court in its judgment entry. It is significant that Section III-7(f), of the City's Charter provides that Council shall by ordinance make provision for, and proceeds to enumerate topics to be subject to ordinances, including (f) "[t]he advertising award of contracts * * *[.]" A lease is a contract. Stauffer v. TGMCamelot, Inc., 12th Dist. No. CA2005-12-508, 2006-Ohio-3623, at ¶ 12;Coen Oil Co. v. O'Connor (Dec. 6, 1985), 11th Dist. No. 11-016, 1985 Ohio App. LEXIS 9594, at 4. It is undisputed that the City has not enacted an ordinance to address bidding and advertising in regard to the lease of city owned real estate. Further, it is clear that the City's adoption of the Resolution does not comply with the City's Charter requirement to enact an ordinance.
 {¶ 27} "'A resolution ordinarily is a declaration of a council, or a legislative body evincing some purpose or intent to do some act not the doing of the act itself. Ordinarily it is the intention to enter upon some enterprise of public moment, something authorized by law that it may do. An ordinance ordinarily provides a rule of conduct and is a law binding upon a community. They are declarations of a rule of conduct for the enforcement of a right or the creation of a duty.'" W. B. Gibson Co.v. Warren Metro. Hous. Auth. (1940) 65 Ohio App. 84, 87-88. (citation omitted.) "* * * [T]he adoption of a resolution is the proper procedure for an informal enactment providing for the disposition of a particular item of business, while the passage of an ordinance is the proper procedure for the enactment of a regulation of a general or permanent nature." Wuebker v. Hopkins (1928), 29 Ohio App. 386, 388 (interpreting G.C. 4224, predecessor section to R.C. 731.17).
 {¶ 28} Here, the Resolution conferred authority upon the mayor to enter into a contract for the lease of specific property for a particular purpose. Thus, we conclude that the Resolution cannot be viewed as compliance with Section III-7(f), of the City's Charter.
 {¶ 29} As a matter of public policy, it is the obvious intention of the section to provide for orderly administration of the city government and enact ordinances to insure a public awareness of the procedures of governmental operations. It follows that when the City chooses to exercise its reservation of home rule, it must follow the mandates of its own charter.
 {¶ 30} The City's argument that the trial court improperly relied upon inapplicable City ordinances is also not well-taken. In its judgment entry, the court reviewed two ordinances of the City Code that address competitive bidding and the award of contracts. The first concerns contracts for public improvements and levying of assessments. The other ordinance relates solely to the sale of surplus city real estate property. Both ordinances require compliance with state statutes in the award of contracts. The ordinance governing the sale of real estate expressly requires compliance with R.C. 721.03. In its judgment entry, the court stated that "[although not directly relevant, this provision shows the City's intent when disposing of real estate to comply generally with R.C. 721.03." (Emphasis added.) Then, the court concluded as to contracts for lease of city owned land, "[t]he City's charter or ordinances do not have any provisions specifically overriding or superseding R.C. 721.03. * * *" The court further found that "there isnothing in Resolution No. 2005-167 that overrides R.C. 721.03. This resolution only authorizes the mayor to enter into a lease with Black Gold Exploration, Inc. and makes no mention of how this company was selected." (Emphasis added.)
 {¶ 31} When the charter and municipal ordinances are silent, the provisions of the Ohio statutes govern. Bednar, 280-281; Deemer v.Ashtabula City Civ. Serv. Comm. (1997), 124 Ohio App.3d 630, 634. (citations omitted.) The City has failed to properly exercise its home rule power by enactment of an ordinance as required by its Charter. In the absence of an ordinance setting forth the procedure for bidding and advertising of lease of city owned land, we determine that R.C. 721.03
controls.
 {¶ 32} Based upon the foregoing, the trial court did not err in granting injunctive relief, by ruling in favor of Great Plains that the City was subject to R.C. 721.03 and failed to comply with it.
 {¶ 33} Although not presented for argument by the City, we further find that the evidence supports that there was no adequate remedy at law, no irreparable harm to third parties, and that the public interest is served by granting the injunction. The trial court did not abuse its discretion in granting the permanent injunction. The City's first and second assignments of error are without merit.
 {¶ 34} In its third assignment of error, the City asks this court to address the permanent portion of the court's injunctive order; i.e., requiring future compliance with R.C. 721.03. In its judgment entry the court ordered that: "[t]he City * * * [was] restrained and enjoined from proceeding with or allowing any work pursuant to any contract for the lease and drilling of certain property owned by the City * * * at the Lost Nation Airport without first complying with R.C. 721.03."
 {¶ 35} The City argues that the court's order requiring compliance with R.C. 721.03 as to the Lost Nation Real property improperly interferes with potential future council legislative enactments to supersede R.C. 721.03. We disagree.
 {¶ 36} The trial court has the inherent power to modify or vacate a permanent injunction at any time if the party enjoined demonstrates that the conditions upon which the injunction was issued have materially changed. State ex rel. Bosch v. Denny's Place (1954), 98 Ohio App. 351,357; Johnson v. Preston, Dir. of Hwys. (1967), 12 Ohio St.2d 100, 104
(Matthias, J., concurring). See, also, In re Skrha (1994),98 Ohio App.3d 487, 497. A permanent injunction "* * * enjoins the defendant from doing the act complained of, provided the conditions and the rights of the parties remain the same; and that, where, after the entry of the injunction, the rights of the parties have changed, the injunction may thereby be nullified * * * [.]" Johnson, at 101.
 {¶ 37} We conclude that this issue is not yet ripe for appeal. Thus, the City's third assignment of error is without merit.
 {¶ 38} Based upon the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, J., concurs,
DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.