[Cite as *Walters v. Walters*, 2013-Ohio-2554.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| VERONICA WALTERS nka WILSON, et al., | ) ) ) | CASE NO.   12 JE 17 |
| PLAINTIFFS-APPELLEES, | ) ) | |
| VS. | ) ) | O P I N I O N |
| RAYMOND WALTERS, | ) ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas Court, Case No. 89DR346.

JUDGMENT:          Affirmed.

APPEARANCES:
For Plaintiffs-Appellees:        Attorney Mary Corabi
424 Market Street
Steubenville, Ohio 43952
(For Veronica Walters nka Wilson)

Attorney M. Catherine Savage-Dylewski
16001 State Route 7
Steubenville, Ohio 43952
(For CSEA)

For Defendant-Appellant:        Attorney Lydia Spragin
331 South 4th Street
Steubenville, Ohio 43952

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: June 17, 2013

VUKOVICH, J.

**{¶1}** Defendant-appellant Raymond Walters appeals the decision of the Jefferson County Common Pleas Court, which issued an order relative to his child support arrearage prohibiting him from any voluntary act or omission tending to diminish any property, benefit or value coming to him from any source, including benefits that may come due to him through the estate of his mother, his mother's prior employer, or the Social Security Administration. The court also ordered him to deliver to appellee Child Support Enforcement Agency ("CSEA") all things of value received from or through the estate of his mother or from his mother's employer.

**{¶2}** Appellant contends that the domestic relations court did not have the authority to issue such an order for various reasons. He also contends that the order improperly interferes with his ability to act as administrator of his mother's estate by ordering him to deliver all things of value to CSEA. Appellant additionally alleges that a caseworker's testimony contained inadmissible hearsay. Finally, he complains that the judge who signed the amended ex parte restraining order had previously disqualified himself from the case. For the following reasons, appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

**{¶3}** Appellee Veronica Wilson ("the obligee") was granted a divorce from appellant Raymond Walters in 1989. She received custody of the parties' two children. No child support order was initially entered due to appellant's unemployment. In 1991, a child support order in the amount of $534.71 per month began but was suspended in 1992 when appellant lost his job. At that time, the court ordered appellant to seek work and to immediately provide notice of employment to CSEA.

**{¶4}** Nothing further occurred in the case until 1997, when appellant reportedly telephoned from Saudi Arabia to report new employment but then failed to respond to further requests for information from CSEA. Said agency then filed a motion asking that the prior child support order be reactivated and a motion for

contempt. Due to the inability to serve appellant, the cause was not heard until December of 2003.

{¶5} Thereafter, a child support order was issued in the amount of $401.76 per month beginning June 30, 1997 and increasing to $460.71 per month on May 13, 2003. Appellant was ordered to pay $92 per month toward his arrearage. A warrant was also issued for his arrest on the contempt charge. Upon the graduation of the oldest child, appellant's child support obligation was reduced to $230.36 per month in mid-2005. At that time, CSEA filed another motion for contempt and a motion for judgment on the arrears.

{¶6} On October 5, 2005, a judgment was entered on the arrearage of $40,318.47. The court also found appellant in contempt and sentenced him to thirty days in jail with twenty days suspended upon the condition that he make his support payments. This order noted that appellant was required to report all sources of income and ownership of all assets including any inheritance over $500. As he did not reliably make his support payments, he was later ordered to complete the suspended twenty days in jail. When the second child graduated in 2006, appellant's current support was terminated, and his monthly payments were redirected toward the arrearage.

{¶7} On December 28, 2011, appellant filed a motion to modify his arrearage payments, stating that he had become permanently disabled and that his sole source of income was $777 per month in Social Security Disability payments. The court held an evidentiary hearing on this motion. In a May 14, 2012 judgment entry, the court modified his monthly payment toward the arrearage from $783.21 per month to $130.16 per month.

{¶8} In the meantime, appellant opened a probate claim and successfully sought to be appointed administrator of his mother's estate. Appellant's mother had died, leaving appellant and two brothers as next of kin. On May 1, 2012, a CSEA caseworker overheard appellant in the hallway of the courthouse yelling that CSEA should not be able to collect his inheritance and instructing the estate's attorney to put everything in his brother's name. That attorney then mentioned on the record to the probate court that there was a possibility that appellant would renounce his

interest in the estate. When CSEA asked the probate court for assistance in collecting the arrearage, the probate court advised that it would leave the matter to the domestic relations court.

**{¶9}** That same day, CSEA filed a motion with the domestic relations court asking for an ex parte restraining order and a permanent injunction to prohibit appellant from transferring his interest in his mother's estate and to require him to apply his inheritance toward his arrearage. An ex parte order was entered on May 1, 2012, prohibiting appellant from renouncing any interest in his mother's estate, pending a full hearing on the matter.

**{¶10}** An amended motion was filed the next day adding some details and further asking that appellant be restrained from foregoing his right to receive fees as the administrator of the estate. The court granted the amended motion for an ex parte restraining order on May 2, 2012, adding that appellant was also temporarily enjoined from foregoing payment for acting as administrator.

**{¶11}** The evidentiary hearing was held on May 14, 2012. The CSEA caseworker testified that, while she was outside of the courtroom waiting for the probate hearing, she saw appellant speaking to the estate's attorney in a very loud manner. She disclosed that appellant was swearing at the attorney and saying that CSEA should not be permitted to take his inheritance. She testified that appellant mentioned putting the inheritance in his brother's name and making sure that everything was out of his name so CSEA would have nothing to take from him. (Tr. 25).

**{¶12}** Appellant testified that he had a problem with the court prohibiting him from renouncing any interest in the estate because it sounds "strange." (Tr. 54). He stated that the obligee and his brother were "conspiring to do what they can do to help this court steal out estate matters from myself." (Tr. 55). But, he then said that he had no problem with the estate assets being distributed to pay off his arrearage. (Tr. 56). He claimed that he never talked about renouncing his interest as testified to by the caseworker and that he had never even discussed it as an option. (Tr. 56-58). He did acknowledge, however, that the estate's attorney mentioned it on the record at the probate hearing. (Tr. 58).

**{¶13}** The obligee testified that appellant told her that he did not owe her anything "and he wanted me just to not accept the child support order, to say I don't want any claim to it." He insisted that she was not entitled to any part of his mother's estate. (Tr. 61). Even before his mother died, he told the obligee that he would do anything so she would not get an interest in his mother's house, once saying he would burn it down. (Tr. 62).

**{¶14}** On May 25, 2012, the domestic relations court entered an "Order Relative to Arrearages." The court found that a substantial child support arrearage existed in the case and that appellant was likely to engage in conduct that would diminish his ability to pay. The court stated that it appeared appellant was in the process of renouncing his interest in his mother's estate and that he was thus also likely to block any interest in benefits from his mother's former employer. The court then prohibited appellant "from any voluntary act or omission tending to diminish any property, benefit or value coming to him from <u>any</u> source." The court specified that this included benefits that may come due through his mother's estate, his mother's prior employer, Social Security, or any other source.

**{¶15}** The court also ordered appellant to notify CSEA within 24 hours of learning of any benefit to which he is entitled. Lastly, the court ordered appellant to deliver to CSEA all things of value received from or through the estate or his mother's employer in the form in which it was received (explaining that if he received a check, he should deliver it in that form without cashing it first). The court explained that any violation of the order would be deemed contempt of court and could negate any "inability to pay" defense.

**{¶16}** Appellant filed a motion for reconsideration of this order, which was overruled on June 18, 2012. Appellant filed a notice of appeal on Monday, June 25, 2012, which purported to appeal both the May 25, 2012 order relative to arrearages and the June 18, 2012 denial of reconsideration. We note here that a motion to reconsider a final appealable order is a nullity. *See Pitts v. Dept. of Transp.*, 67 Ohio St.2d 378, 379, 381, 423 N.E.2d 1105 (1981) (motion is a nullity as are all judgments stemming from that motion).

**{¶17}** In any event, appellant's brief does not actually assign errors related to the denial of his motion for reconsideration. Rather, his appellate arguments focus on the May 25, 2012 order relative to arrearages and events occurring prior thereto. Appellant sets forth six assignments of error, which are paraphrased infra as a direct quote of the entire text of each assignment would be cumbersome and intrusive to the flow of the future opinion.

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

**{¶18}** Appellant's first assignment of error contends that the court erred in restraining him from renouncing his interest in his mother's estate because no claim was filed under R.C. 2117.06(A) and thus the claim is barred by the statute of limitations within R.C. 2117.06(C) because it was not filed within six months of the decedent's death.

**{¶19}** Pursuant to the statute cited here, "All creditors having claims against an estate, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated, shall present their claims in one of the [listed] manners * * *." R.C. 2117.06(A). All claims must be presented within six months of the decedent's death even if no administrator or executor is appointed during that period. R.C. 2117.06(B).

**{¶20}** Except as provided in R.C. 2117.061, a claim that is not presented within six months of the death shall be forever barred, and no payment shall be made and no action shall be maintained on the claim, except as provided in R.C. 2117.37 to 2117.42 with reference to contingent claims. R.C. 2117.06(C). As a result of the reference to exceptions, appellant cites to R.C. 2117.37 and 2117.39 and notes that these statutes were not followed either.

**{¶21}** However, as appellees point out, R.C. 2117.06 is inapplicable to this case. Contrary to appellant's position, the *Travis* case he cites is not a case on point (and is not binding on our court in any event). *See Travis v. Thompson*, 8th Dist. No. 78384 (June 21, 2001). In that case, *the decedent* was the child support obligor. Thus, the child support obligee in that case was a creditor with a claim against the estate.

**{¶22}** The case at bar is wholly distinguishable as the child support obligor is not the decedent, and appellees are not creditors with a claim against the decedent's estate. Appellant is a judgment debtor due to a prior child support arrearage, which fact is not disputed here. Appellees' claim is for a restraining order against appellant in domestic relations court as an individual debtor due to fear that he is attempting to engage in what they equate with a fraudulent transfer, which topic is discussed where raised infra. Appellees do not present a claim as a creditor of the estate. As such, the probate law contained in R.C. 2117.06 has no application here and does not bar appellees' request for injunctive relief in the domestic relations division. This assignment of error is overruled.

<u>ASSIGNMENTS OF ERROR NUMBERS TWO & FIVE</u>

**{¶23}** Paragraph 3 of the trial court's order states that appellant: "shall deliver to CSEA all things of value received from or through the estate of [his mother] or from [his mother's employer], in the form in which it was received. In other words, if Defendant receives a check, he shall deliver the actual check received to CSEA rather than cash the check and deliver the money." Appellant's second assignment of error contends that this paragraph improperly interferes with his fiduciary duties owed as administrator of his mother's estate in the probate court. His fifth assignment of error claims this paragraph is "overly broad" because it "does not strictly pertain to what the heir is to do upon actual receipt of any distribution from the estate."

**{¶24}** Appellant cites R.C. 2109.20, which provides that a fiduciary's duties are those required by law and any additional duties imposed by the court. The statute further states that letters of appointment shall not issue until the fiduciary executes a written acceptance of his duties, acknowledging that he is subject to removal for failure to perform those duties and that he is subject to penalty for conversion of property held as a fiduciary. R.C. 2109.20. Appellant then notes that an administrator's fiduciary duties include collecting estate assets, paying debts, and making distributions.

**{¶25}** He asks how he is to accomplish his duties as administrator if he is to deliver all things of value received from or through the estate "without some sort of

paper trail or something which will provide him with the ability to track the monies and file accurate reports." (Appellant's Brief at 13). He then points out that CSEA is not a fiduciary as to the estate and is not entitled to all things of value as appellant is not the only beneficiary of the estate.

{¶26} It thus appears appellant is taking issue with the wording of the trial court's order, which he believes restricts him from fulfilling his duties as the administrator and imposes upon CSEA the job of super-administrator. However, CSEA acknowledges that this is not its function. It is not disputed that if appellant were to improperly take money from the estate as the administrator without distributing it through official channels to the heirs, that would be a matter for the probate court.

{¶27} CSEA urges that the order does not restrict appellant in his capacity as administrator as he believes but only restricts him in his capacity as an heir. In other words, the order of the domestic relations court is not attempting to confiscate estate property prior to distribution but only after distribution to appellant as a beneficiary. We agree.

{¶28} The order refers to the "Defendant" (not "Defendant, Administrator of Estate of Walters"). Moreover, it speaks of items of value received by him "from or through the estate." This indicates it applies to items distributed to him personally. The order does not evince an intent to have appellant provide estate assets to CSEA prior to their distribution to the beneficiaries. Rather, the intent of the order is for appellant to provide CSEA with things of value that he receives in his personal capacity as beneficiary or fees payable to him personally for acting as administrator, not items received in his *representative capacity* as administrator of the estate, i.e. items that are not his to keep but items that would be temporarily held by any administrator of an estate (e.g. a non-beneficiary administrator).

{¶29} That is, if the estate receives a check from a bank for closing the decedent's prior account, he can deposit it in the estate's account as administrator in order to pay the debts of the estate. However, if the administrator of the estate issues a check to each beneficiary for their share of the estate, for instance, then appellant is to provide his check to CSEA without cashing it first. As CSEA suggests,

if appellant encounters an issue regarding clarity on particular items or acts, he can seek instruction for each question that arises or he could seek permission to step down as administrator. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE

**{¶30}** Appellant's third assignment of error contends that the probate court has exclusive jurisdiction over matters involving the renunciation of an interest in an estate. He also alleges that a right to disclaim can only be barred as provided in R.C. 5815.36. In doing so, he urges that the case of *Stein v. Brown*, 18 Ohio St.3d 305, 480 N.E.2d 1121 (1985), mentioned to the domestic relations court, is no longer valid because the statutes involved in that case have been recodified.

**{¶31}** The statute dealing with disclaimers of succession to property was previously contained in R.C. 1339.60. In 1999, that statute was amended and recodified as R.C. 1339.68. In January of 2007, that statute was recodified as R.C. 5815.36. The statute provides that a disclaimant may disclaim, in whole or in part, the succession to any property by executing and by delivering, filing, or recording a written disclaimer instrument in the manner provided. R.C. 5815.36(B)(1). Appellant points out that at the time of the court's order, it was not too late for him to file a disclaimer. *See* R.C. 5815.36(D).

**{¶32}** Besides requiring a timely filing, the statute also provides that the disclaimant's right to disclaim under this section is barred if the disclaimant does any of the following: (1) assigns, conveys, encumbers, pledges, or transfers, or contracts to assign, convey, encumber, pledge, or transfer, the property or any interest in it; (2) waives in writing the disclaimant's right to disclaim and executes and delivers, files, or records the waiver in the manner provided; (3) accepts the property or an interest in it; or (4) permits or suffers a sale or other disposition of the property pursuant to judicial action against the disclaimant. R.C. 5815.36(J). *See also* former R.C. 1339.60(J)(1)-(4) (with identical provisions).

**{¶33}** Appellant posits that these are the sole means by which he could be barred from disclaiming his interest in the estate. He concludes that none of these four statutory bars to disclaimer apply and thus any order barring him from disclaiming his interest violates this statute.

**{¶34}** In *Stein*, a wrongful death action was filed against a drunk driver who killed a child. The driver's brother then died, leaving half of his estate to the driver. The driver filed a disclaimer of his interest in the estate. The probate court was asked by the executors to determine the validity of the disclaimer. The child's mother was permitted to intervene; she argued that the disclaimer should not be permitted because it constituted a fraudulent conveyance under R.C. 1336.07, which provided that every conveyance made with actual intent to hinder, delay, or defraud either present or future creditors is fraudulent. *Stein*, 18 Ohio St.3d at 306, 308.

**{¶35}** The Supreme Court explained that the prior general rule was that the beneficiary's motives for renouncing an interest in an estate are immaterial and do not affect the validity of the renunciation. *Id.* at 307. The Court noted that an Ohio appellate court had recognized fraud or collusion as an exception to that general rule. *Id.* The Court also noted that other jurisdictions may have once disagreed with this exception, but upon the adoption of the Uniform Fraudulent Conveyance Act, the trend in many jurisdictions was moving toward invalidating a disclaimer done to avoid a creditor. *Id.*

**{¶36}** The Supreme Court of Ohio then held that the power to vest title in another is the equivalent of a transfer of that property, making the fraudulent transfer statute applicable to disclaimers. *Id.* (and rejected the relation back doctrine, which proceeded under the theory that the disclaimer relates back to the day before the decedent's death, meaning the disclaimant never received the interest). Besides R.C. 1336.07, the Court also noted that R.C. 1336.04 provided that every conveyance made by a person who is or will thereby be rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made without fair consideration. *Id.* at 307-308, fn.1 (but not proceeding under the constructive fraud statute as there was no evidence of insolvency in the record).

**{¶37}** The Court concluded that the child's mother, as administrator of her child's estate, was a creditor with a tort cause of action against the driver and thus had the right to challenge the conveyance. *Id.* at 308., citing R.C. 1336.01(C) (defining a creditor as "a person having any claim, whether matured or unmatured,

liquidated or unliquidated, absolute, fixed, or contingent."). The Court then upheld the factual finding of fraudulent intent. *Id.* at 309.

{¶38} The Court concluded by announcing: "where a will beneficiary seeks to disclaim an inheritance pursuant to R.C. 1339.60(B) with the actual intent to defraud a present or future creditor, the renunciation is a fraudulent conveyance under R.C. 1336.07." *Id.* Notably, restraint on the right to disclaim was authorized by the Court *without regard to whether the four statutory bars on disclaimer were met*.

{¶39} Contrary to another argument presented by appellant here, the fact that the mother was a tort creditor, as opposed to a child support creditor, does not distinguish *Stein*. The person asking to restrain the beneficiary's right to disclaim an estate just happened to be a tort creditor, and the Supreme Court found that she had a right to challenge the conveyance as fraudulent. Various types of creditors were covered by the language of the Uniform Fraudulent Conveyance Act and are now covered by the language of the Uniform Fraudulent Transfer Act at the time of the order herein. In fact, the remedy portion of that Act refers to "a creditor or a child support enforcement agency on behalf of a support creditor." R.C. 1336.07(A).

{¶40} Similarly, appellant does not coherently explain how the fact that *Stein* proceeded under the Uniform Fraudulent Conveyance Act makes the holding no longer valid because such Act was replaced by the Uniform Fraudulent Transfer Act. The language in former R.C. 1336.07 applied by the Supreme Court in *Stein* is contained in the version of R.C. 1336.04(A)(1) applicable to this case. As such, the vague argument presented on this topic fails.

{¶41} The remaining argument is whether the probate court has exclusive jurisdiction over such matters. Although *Stein* was a probate case, it does not answer the question of whether other courts can rule regarding a debtor's right to disclaim.

{¶42} The bankruptcy court for the Northern District of Ohio used the *Stein* case in evaluating the bankruptcy trustee's request for the court to determine the debtor's right to disclaim an inheritance in a local probate court. *In re Betz*, 84 B.R. 470 (Bankr.N.D.Ohio 1987). The debtor and his partner were sued by a creditor after the debtor filed for bankruptcy, and the trustee sought millions of dollars from the

partners. The debtor's mother then died leaving him half of an estate worth approximately $300,000. The debtor filed a disclaimer of his interest in his mother's estate under prior R.C. 1339.60(B), which is the same as R.C. 5815.36(B)(1). The bankruptcy court conducted a trial and concluded that the debtor's disclaimer would be a fraudulent conveyance under R.C. 1336.07 as per *Stein. Id.* at 472. Thus, the court ordered that the debtor not disclaim his interest in his mother's inheritance and to withdraw any disclaimer filed in the probate court within 14 days. *Id.*

{¶43} CSEA urges that this case supports the position that it is not only the probate court which can restrain a debtor from disclaiming his interest in a probate estate. Appellant seems to argue that the distinction lies in the fact that the disclaimer statute has been relocated from one chapter to another. However, the precise statutory language exists in R.C. 5815.36(J)(1)-(4) that existed in the prior R.C. 1339.60(J)(1)-(4). *See Tachet v. Ameritrust*, 8th Dist. Nos. 57781, 57782 (Apr. 11, 1991). Just because the statute containing those bars was numbered differently would not distinguish the case at bar. And, as aforementioned, the portion of the Uniform Fraudulent Conveyance Act utilized in *Stein* still existed in the Uniform Fraudulent Transfer Act at the time this case came before the domestic relations court.

{¶44} The statute for disclaimer contains methods for a probate court to determine whether the disclaimer can be prohibited. However, it does not limit other courts, presiding over child support arrearage judgments for instance, from enjoining a person from exercising an option to disclaim that he otherwise possesses.

{¶45} As appellees point out, R.C. 1336.07 permits a creditor or a child support enforcement agency on behalf of a support creditor to avoid a transfer, to issue an injunction against further disposition by the debtor, or obtain any other relief that the circumstances may require. R.C. 1336.07(A)(1)-(3). Accordingly, this statute is not limited to probate courts.

{¶46} Moreover, a judgment had already been issued against the debtor by the domestic relations court. The child support arrearage was entered as a domestic relations matter years ago. Appellant himself invoked the domestic relation's court continuing jurisdiction by seeking a modification of his monthly arrearage obligation.

During that time period, it was discovered that he was contemplating what was considered at the time a fraudulent transfer in order to avoid the court intercepting lump sum payments soon to be paid to him. The common pleas court, including the domestic relations division, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. R.C. 3105.011. For all of these reasons, the arguments presented under this assignment are without merit.

### ASSIGNMENT OF ERROR NUMBER FOUR

{¶47} Appellant's fourth assignment of error alleges that the testimony of the CSEA caseworker constitutes inadmissible hearsay. As aforementioned, the caseworker testified that when she was outside the courtroom at the probate hearing held a week prior, she saw appellant speaking to the estate's attorney. She stated that they were talking very loud. She disclosed that appellant was swearing at the attorney and saying that CSEA should not be permitted to take his inheritance. A general objection by appellant's counsel was overruled. The caseworker then testified that appellant made references to putting the inheritance in his brother's name and making sure that everything is out of his name so CSEA would have nothing to take from him. (Tr. 25).

{¶48} As the appellees counter, this testimony was not hearsay. A declarant's statement is not considered hearsay if it is an admission by a party opponent. Evid.R. 801(D)(2). Thus, a statement is not hearsay if it is offered against a party and is the party's own statement, in either his individual or representative capacity. *Id.*; *State v. Byrd*, 32 Ohio St.3d 79, 89, 512 N.E.2d 611 (1987); *State v. Wallace*, 7th Dist. No. 06MA44, 2007-Ohio-6226, ¶ 38.

{¶49} The caseworker's testimony offered appellant's own statement against him. Consequently, this assignment of error is without merit.

### ASSIGNMENT OF ERROR NUMBER SIX

{¶50} In 1998, Attorney Henderson, who is now a judge, entered an appearance in this case for CSEA. Notably, this was during the time that service could not be made on appellant in order to reactivate the child support obligation. Thereafter, Attorney Henderson became a judge in Jefferson County. In 2003, when the matter of reactivating child support was finally to come before the court, Judge

Henderson transferred the case to Judge Bruzzese and noted that he had previously worked on the case for CSEA.

{¶51} Judge Bruzzese granted the May 1, 2012 request for an ex parte restraining order. As previously noted, CSEA filed an amended motion the next day adding some details and further asking that appellant be restrained from foregoing his right to receive fees as the administrator of the estate. The May 2, 2012 order granting the amended motion for an ex parte restraining order was signed by Judge Henderson as Judge Bruzzese was unavailable. Appellant argues: "It is reversible error for an ex parte order to be signed by Judge Henderson when he had already disqualified himself * * * ."

{¶52} Initially, we note that an appellate court lacks jurisdiction to review a claim that a trial judge should have recused himself. *State ex rel. Hough v. Saffold*, 131 Ohio St.3d 54, 2012-Ohio-28, 960 N.E.2d 451, ¶ 2. Only the Chief Justice or the Chief Justice's designee may hear disqualification matters. *Id.*, citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978). This court is thus without jurisdiction to void the judgment of the trial court upon a claim of conflict of interest or bias. *Id.*

{¶53} As for a trial judge's act of ruling in a case *nine years* after a voluntary recusal, any objection must be seasonably raised or any error is waived. *See State ex rel. Gomez v. Nau*, 7th Dist. No. 08NO355, 2008-Ohio-5685, ¶ 19, citing *Tissue v. Tissue*, 8th Dist. No. 83708, 2004-Ohio-5968, ¶ 12, citing *Tari v. State* (1927), 117 Ohio St. 481, 494, 159 N.E. 594. Appellant entered no objection after Judge Henderson issued the amended ex parte temporary restraining order at a time when something could have been done about the issue by that judge or the Supreme Court.

{¶54} This observation ties in with our final observation: the temporary ex parte order (regardless of who signed it) expired or dissolved when Judge Bruzzese signed his final order relative to the arrearage. "A temporary restraining order is, by its very nature, just that - temporary. It is preliminary to something else." *Van Camp v. Riley*, 16 Ohio App.3d 457, 469, 476 N.E.2d 1078 (12th Dist.1984). The temporary restraining order was superseded by the permanent injunction. *Id.*

**{¶55}** In accordance, issues with the ex parte order no longer exist for purposes of appeal and are moot. *See City of Columbiana v. J & J Carwash, Inc.*, 7th Dist. No. 04CO20, 2005-Ohio-1336, ¶ 21, citing *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 269, 747 N.E.2d 268 (1st Dist.2000), *D & N Dev., Inc. v. Schrock*, 5th Dist. No. 89AP080066 (Mar. 29, 1990), and *Van Camp*, 16 Ohio App.3d at 469. *See also Great Plains Exploration, LLC v. Willoughby*, 11th Dist. No. 2006-L-022, 2006-Ohio-7009, ¶ 13 (temporary restraining issues are moot as they were preempted by permanent injunction). In fact, appellant raises no issue with the amended temporary order except with regards to who signed it. Accordingly, this assignment of error is without merit.

**{¶56}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, J., concurs.