MORGAN ET AL., APPELLANTS, *v.* CITY OF CINCINNATI, APPELLEE.

[Cite as Morgan *v.* Cincinnati (1986), 25 Ohio St. 3d 285.]

(No. 85-1592—Decided August 13, 1986.)

*Swain & Hardin Co., L.P.A.,* and *Donald E. Hardin,* for appellants.

*Richard A. Castellini,* city solicitor, and *Jerry F. Luttenegger,* for appellee.

CLIFFORD F. BROWN, J.   As their sole proposition of law, appellants insist that "[w]hen a municipality denies permanent civil service employees statutory promotional rights as the result of an action taken in bad faith by an official of the municipality, those employees are entitled to awards of retroactive back pay and seniority as a matter of public policy." We will first deal with whether any finding of bad faith was made in the instant cause, then proceed to the merits of this particular appeal. We will conclude with a discussion of the statute of limitations.

I

As a preliminary matter, we note appellee's contention that no actual finding of bad faith appears within the record in the case at bar. Of course, it is basic appellate law that "[a] reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings * * *." *State* v. *Ishmail* (1978), 54 Ohio St. 2d 402 [8 O.O.3d 405], paragraph one of the syllabus. However, upon our review of the record in the instant case, we conclude that the trial court made a finding of bad faith sufficient to permit consideration of the instant appeal on its merits.

In paragraph forty-four of their complaint, appellants specifically alleged that the appellee, "acting through the Safety Director, its employee and agent, acted in bad faith by knowingly ignoring the November 12, 1975 request to fill the existing vacancy, actually concealing the existence of the November 8, 1975 vacancy in the rank of Police Captain for a period in excess of sixty (60) days after the creation of the vacancy; and continuing to conceal the vacancy until enough time had passed to delay the promotional examination for the rank of Police Captain until Lieutenant[s] Butler and McDonald were both eligible to take the promotional examination." The complaint also referred to the appellate decision in *Mc-*

*Carter,* alleging that *McCarter's* factual basis was the same as alleged in paragraphs one through forty-four of the instant complaint. The appellate level *McCarter* opinion was attached to the complaint as Appendix A; Appendix B, a letter from appellants' attorney to the city of Cincinnati Personnel Officer, quoted at length from the trial court's findings in *McCarter,* including the above-quoted language which the appellants adopted from the trial court's findings of fact and conclusions of law.

Although the parties' stipulations do not refer directly to the *trial court* opinion in *McCarter,* the parties' Stipulation 38 as to exhibits agrees to the admission of the letter which became Appendix B to the complaint, and which, as quoted above, recited the *McCarter* trial court finding of bad faith.

In any event, this court is free to take judicial notice of the *McCarter* trial court's finding of bad faith in interpreting the language of both opinions below, which clearly agree that the facts in the instant cause are identical to those in *McCarter.* Indeed, appellee's assertion that no finding of bad faith appears in the record before us today would appear disingenuous at best.

## II

Turning to the issue presented by this appeal, appellants argue that classified civil service promotions delayed as the result of actions taken in bad faith by a municipality should result in an exception to the facially unequivocal language we used in *State, ex rel. Gibbons,* v. *Cleveland* (1984), 9 Ohio St. 3d 216, 217: "Appellants argue that no legal right to back pay can be established before an appointment has occurred, *regardless of the reasons for the failure to appoint.* We agree." (Emphasis added and footnote omitted.)

In *Gibbons,* we explained that "mandamus does not lie to compel the granting of benefits conferred by the civil service laws unless it has been established that the employee was appointed to the civil service position in question. *State, ex rel. Lynch,* v. *Taylor* (1940), 136 Ohio St. 417 [16 O.O. 577]; *State, ex rel. Baker,* v. *Wichert* (1953), 159 Ohio St. 50 [50 O.O. 26]; *State, ex rel. Brown,* v. *East Cleveland* (1979), 58 Ohio St. 2d 232 [12 O.O.3d 235]; *State, ex rel. Pennington,* v. *Ross* (1980), 63 Ohio St. 2d 58 [17 O.O.3d 36]," *id.,* and that, "[s]imilarly, when a civil service appointment has been compelled by way of mandamus, no concomitant order of back pay was included for the period of time before the employee received his appointment. *State, ex rel. Pell,* v. *Westlake* (1980), 64 Ohio St. 2d 360 [18 O.O.3d 514]; *State, ex rel. Wolcott,* v. *Celebrezze* (1943), 141 Ohio St. 627 [26 O.O. 194]," *id.* at 218. Each of the foregoing cases is distinguishable from the case at bar.

In *State, ex rel. Lynch, supra,* relator was denied a writ of mandamus because his initial appointment *preceded* approval as required by the civil service commission, while the relevant statute provided that such appoint-

ments could only be made after approval. In *State, ex rel. Baker, supra,* relator did not show she had ever been a civil service employee, having taken neither a competitive nor a non-competitive examination for her former position. Similarly, in *State, ex rel. Brown, supra,* relator had failed to take either a competitive or a non-competitive examination, despite such examinations having been conducted. See, also, *State, ex rel. Pennington, supra,* in which relator was simply not in the classified civil service. Thus, none of those relators was clearly entitled to any benefits conferred by civil service laws.

We note that although no concomitant order of back pay was included for the period of time prior to the relators' respective appointments in *State, ex rel. Pell,* and *State, ex rel. Wolcott,* neither was a demand for back pay made in either case.

*State, ex rel. Gibbons, supra,* and each case relied upon therein, was brought in mandamus, an extraordinary writ which may be issued only where relators establish a clear legal right to the relief prayed for; a clear legal duty upon respondents to perform the act requested; and that relators have no plain and adequate remedy in the ordinary course of the law. *State, ex rel. Butler,* v. *Demis* (1981), 66 Ohio St. 2d 123, 124 [20 O.O.3d 121]. The factual situation presented in *Gibbons* is entirely different from the case at bar. There, the municipality had enacted certain ordinances which were later declared invalid. Relators had sought back pay for the period of time during which the city acted in reliance on those ordinances. Here, on the other hand, the trial court and court of appeals agree that the municipality actively violated state civil service laws by impermissibly delaying the competitive examination beyond the time required by R.C. 124.44. In such a case, it would be wholly inequitable to deny an employee the pay and seniority he would have been entitled to had the city not acted in contravention of state law. To hold otherwise would permit municipalities to avoid their legal responsibilities without regard to damages suffered by their employees. This is particularly true when the municipality's statutory violations are undertaken, as was found here, in bad faith. Thus, we hold that where a civil service employee shows that a promotion to which he was entitled was delayed as the result of actions taken by a municipality in violation of R.C. 124.44, that employee is entitled to recover back pay and seniority for the period of the delay.

III

Despite our disposition of this cause on its merits, there remains one additional hurdle. At the trial level, appellee herein filed a motion to dismiss on the basis that appellants' claims were barred by the statute of limitations, which motion was denied. Although appellee did not file a notice of appeal in the court of appeals, it argued within its brief that "[a]n additional reason to affirm the judgment below" was that the complaint was filed outside the four-year statute of limitations provided by R.C.

2305.09(D).[1] Having erroneously found *Gibbons, supra,* dispositive of the appeal, the court of appeals did not reach any question as to the statute of limitations. Appellee renews its argument to this court on authority of R.C. 2505.22, which authorizes an appellee who has not filed an appeal nonetheless to file assignments of error in the interest of preventing a reversal.

Appellants argue that appellee has somehow waived its argument related to the statute of limitations, apparently by failing to file a cross-appeal in the court of appeals and again in this court. We disagree with that hypertechnical view.

By the terms of R.C. 2505.22, "[a]ssignments of error may be filed on behalf of an appellee which shall be passed upon by a reviewing court before a judgment or order is reversed in whole or in part. The time within which assignments of error on behalf of an appellee may be filed shall be fixed by rule of court." App. R. 12 provides in pertinent part that "(A) * * * The appeal shall be determined on its merits on the *assignments of error set forth in the briefs* * * *" (emphasis added), and that the court of appeals shall affirm the judgment of the trial court "(B) [w]hen the court of appeals determines that the trial court committed no error *prejudicial to the appellant* in any of the particulars *assigned and argued in appellant's brief* * * *" (emphasis added). This is exactly what happened below. Although appellee preserved possible error for review by the court of appeals to prevent a reversal by separately arguing same within its brief, the court of appeals, having found in its estimation no error prejudicial to appellants, had no need to reach appellee's assignment. As we stated in *Parton* v. *Weilnau* (1959), 169 Ohio St. 145, 171 [8 O.O.2d 134]: "* * * [A]n assignment of error by an appellee, where such appellee has not filed any notice of appeal from the judgment of the lower court, may be used by the appellee as a shield to protect the judgment of the lower court * * *."

In this case, however, appellee's "shield" is ineffective to stave off the reversal of the judgment below. The parties to this appeal apparently agree that the appropriate statute of limitations is four years pursuant to R.C. 2305.09(D).[2] By its denial of the motion to dismiss, however, the trial court could only have concluded that the instant complaint was filed within four years after appellants herein discovered, or reasonably could have

---

[1] See fn. 2.

[2] Despite the parties' apparent agreement, we hasten to note that we do not endorse the applicability of the four-year statute of limitations in this case. Rather, a strong argument could be made that the six-year statute of limitations set forth in R.C. 2305.07 was applicable here, in that the back compensation due was a liability created by statute. *Cf. State, ex rel. Gingrich,* v. *Fairfield Bd. of Edn.* (1985), 18 Ohio St. 3d 244. Because the parties' obvious misconception is not dispositive of this cause, however, we decline further consideration of that issue at this time.

discovered, that their promotions had been delayed unlawfully and in bad faith. We agree.

Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY and DOUGLAS, JJ., concur.

HOLMES, J., concurs in part and dissents in part.

LOCHER and WRIGHT, JJ., dissent.

HOLMES, J., concurring in part and dissenting in part. I am in agreement that the broad statement to be found in *State, ex rel. Gibbons,* v. *Cleveland* (1984), 9 Ohio St. 3d 216, that "no legal right to back pay can be established before an appointment has occurred, regardless of the reasons for the failure to appoint," should be clarified or differentiated from the type of case presented herein. In *Gibbons,* I joined the court in stating the general rule that civil service employees have no legal right to the salary and benefits incidental to a rank or position prior to their appointment to the position sought, citing *State, ex rel. Lynch,* v. *Taylor* (1940), 136 Ohio St. 417 [16 O.O. 577]; *State, ex rel. Baker,* v. *Wichert* (1953), 159 Ohio St. 50 [50 O.O. 26]; *State, ex rel. Brown,* v. *East Cleveland* (1979), 58 Ohio St. 2d 232 [12 O.O.3d 235]; *State, ex rel. Pennington,* v. *Ross* (1980), 63 Ohio St. 2d 58 [17 O.O.3d 36]. These cases involved original actions *in mandamus.* However, the same law would generally be applicable if the actions had been ones seeking damages rather than *mandamus.* In either form of action, the mere failure of performing or carrying out of a duty owed, whether or not established by statute, should not reasonably give rise to an obligation for back wages or seniority benefits.

Compensation generally is not payable to an employee unless and until his right to such compensation is established by appointment, and then only after the effective date of such appointment. This we stated in *Gibbons.* What was not provided for in *Gibbons* was the allowance of a claim by the employee when there is a finding of a refusal to appoint based upon bad faith of the city, or a showing of a conscious, intentional violation of the civil service laws. The judgment in this case fills that void by providing that where the denial of a proper appointment has been occasioned by reasons of maliciousness or bad faith, as alleged, the employee may seek wages and benefits payable and due from the date the appointment should have been made. This action provides not only the proper compensation to the employee, but tends to mete out a sanction to the employer. Whether or not the duty is established by statute or otherwise then becomes irrelevant.

The allowance of the damages as sought herein "rests not on the

ground of the abstract or theoretical justice, but on the ground of public policy—a policy which seeks to promote the public safety; to punish, through the medium of a civil proceeding, a fraudulent, malicious, insulting, *or wilful* wrongdoer, and to hold him up as a warning example to others, to deter them from offending in like manner." (Emphasis added.) *Atlantic & Great Western Ry. Co.* v. *Dunn* (1869), 19 Ohio St. 162, 170. See, also, *e.g., Western Union Telegraph Co.* v. *Smith* (1901), 64 Ohio St. 106, 116; *Tracy* v. *Athens & Pomeroy Coal & Land Co.* (1926), 115 Ohio St. 298, 302-303; *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414, 428 [32 O.O. 454].

However, the failure of the majority to include the element of bad faith or willful violation of law on the part of the city in the syllabus implies its unwillingness to differentiate *Gibbons* from the present case because of the bad faith found in the present case. This results in mistaken reliance on the mere fact that the city was ultimately found to have violated a statute. To this, I cannot agree. Such undue emphasis, if intended by the majority, would fully overrule *Gibbons,* since little if any vitality would remain therein. Although a colorable good faith attempt to comply with the statute may have been originally made by a city, it is possible that its actions will later be found violative of state law. Also, such failure to make a particular appointment could be the result of mistake, accident, or negligence, any of which may have been due to good faith action or honest inaction.

The record before the trial court was sufficient to allege and show bad faith upon the part of the employment authorities in disregarding the request to fill an existing vacancy for captain, and in delaying the promotional examination for such office until other officers were eligible to take such examination.

Accordingly, the trial court could have, absent the interpretation given our holding in *Gibbons,* found that the appellants were entitled to the relief that they sought. For these reasons, I concur only in the judgment of the majority, but must dissent as to its incomplete syllabus.

LOCHER, J., dissenting. I must dissent for two reasons. First, the majority's decision to "limit" *State, ex rel. Gibbons,* v. *Cleveland* (1984), 9 Ohio St. 3d 216, is not persuasive. In *Gibbons,* this court held that "no legal right to back pay can be established before an appointment has occurred, *regardless of the reasons for the failure to appoint.*" (Emphasis added.) *Id.* at 217. This language could not be more clear.

Second, the majority simply assumes that Morgan and Hines would have been as successful on a civil service examination held on January 7, 1976, as they were on the actual examination held on March 18, 1976. The "rankings" of Morgan and Hines may have been lower had they taken the examination in January. Thus, their promotions may *not* have been received following that examination. The majority's decision to saddle the

city of Cincinnati with additional expenditures, by awarding back pay and seniority for the period of delay, is based on nothing but pure speculation. For these reasons, I respectfully dissent.

WRIGHT, J., concurs in the foregoing dissenting opinion.