HUNGLER ET AL., APPELLANTS AND CROSS-APPELLEES, *v.*
CITY OF CINCINNATI ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as Hungler *v.* Cincinnati (1986), 25 Ohio St. 3d 338.]

(No. 85-1392—Decided August 13, 1986.)

*Swain & Hardin Co., L.P.A.,* and *Donald E. Hardin,* for appellants and cross-appellees.

*Richard A. Castellini,* city solicitor, and *Robert H. Johnstone, Jr.,* for appellees and cross-appellants.

CELEBREZZE, C.J. Initially, both parties to this appeal have assigned as error the appellate court's determination to remand for further litigation the issue of the city manager's authority to abolish positions in the complement of thirty-nine lieutenants funded through the mandate of city council.[1] This issue was not raised either at trial or on appeal and, as the court of appeals itself pointed out, there was not sufficient basis in the record upon which the court could make a determination of error relative to it.

The authority of the appellate courts is carefully set forth in the Ohio Constitution and the Appellate Rules. Section 3(B)(2), Article IV of the Constitution states in pertinent part that "[c]ourts of appeals shall have such jurisdiction as may be provided by law to review and *affirm, modify,* or *reverse* judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." (Emphasis added.)

App. R. 12 draws the parameters of the court of appeals' exercise of its reviewing power. App. R. 12(A) provides that an appellate court need not pass on errors which are not assigned or argued. Because this language is discretionary, this court has held in *C. Miller Chevrolet v. Willoughby Hills* (1974), 38 Ohio St. 2d 298 [67 O.O.2d 358], that an appellate court may pass on errors not assigned by the parties.

In *Willoughby Hills, supra,* an issue not litigated at trial was raised for the first time by the court of appeals. Subsequent to oral argument, the appellate court ordered both parties to file additional briefs on that issue. Based on those briefs and the record before it, the court of appeals made a determination that error had occurred below. This court stated at 301 that "nothing prevents a court of appeals from passing upon error which was neither briefed nor pointed out by a party."

App. R. 12(B), however, provides that when the court of appeals determines as a matter of law that there was prejudicial error below, it shall reverse the judgment of the lower court or remand the cause with instructions to render judgment or final order in favor of the appellant. App. R. 12(D) further states that "[i]n all other cases where the court of appeals finds error prejudicial to the appellant, the judgment or final order of the

---

[1] The court of appeals had serious concerns that pursuant to our holdings in *State, ex rel. Pell,* v. *Westlake* (1980), 64 Ohio St. 2d 360 [18 O.O.3d 514], *State, ex rel. Finn,* v. *Garfield Heights* (1973), 34 Ohio St. 2d 5 [63 O.O.2d 3], and *State, ex rel. McClure,* v. *George* (1945), 145 Ohio St. 187 [30 O.O. 378], the power to create, fund and abolish positions in the police department resided in the city council rather than in the city manager. Because this issue is not properly before us, we need not decide whether the city manager's powers included the authority to abolish the lieutenant's positions.

trial court shall be reversed and the cause remanded to the trial court for further proceedings."

Thus, a remand by an appellate court to the trial court for further proceedings must be premised on a determination that error occurred below and a ruling on that error.

Consistent with the foregoing, then, it can be stated that although a court of appeals may recognize error not assigned by the parties, there must be sufficient basis *in the record* before it upon which the court can *decide* that error. In the instant case the court of appeals exceeded the permissible exercise of its review. It raised an issue, the city manager's authority to abolish the lieutenant's positions, which was outside the record before it and therefore could not be determined as error. As we stated in *State* v. *Ishmail* (1978), 54 Ohio St. 2d 402, 405-406 [8 O.O.3d 405], "[s]ince a reviewing court can only reverse the judgment of a trial court if it finds error in the proceedings of such court, it follows that a reviewing court should be limited to what transpired in the trial court as reflected by the record made of the proceedings." We therefore reverse that portion of the appellate court's decision remanding this issue to the trial court for further litigation.

The parties to this appeal are in dispute concerning the propriety of appellee's actions in abolishing the two lieutenant's positions in March and July 1982. At trial, the city contended that the elimination of these civil service positions was part of a plan to reorganize the police division for efficiency reasons. The trial court rejected this contention and concluded that one reason the positions were improperly abolished was because the city manager, as appointing authority, had not authorized the demotion-repromotion scheme used to accomplish that end. This finding was reversed by the court of appeals as against the manifest weight of the evidence. Appellants contend that the appeals court improperly substituted its judgment on this issue. We agree.

Our examination of the record demonstrates that there was competent and credible evidence to support the trial court's finding. Although the city claimed that plans to reorganize the lieutenant rank had been developed prior to March 29-30, 1982, the relevant personnel documents contained approvals dated *after* the first set of demotions and repromotions had taken place. The city's personnel forms relevant to events on March 29-30, 1982 and July 24-25, 1982 also contained handwritten after-the-fact notations to the effect that employees were "demoted and promoted to eliminate a position." The legal opinion outlining the demotion-repromotion procedure was not requested until April 5, 1982 and was not issued until April 15, 1982, after the first lieutenant's position had already been eliminated. The city manager further admitted at trial that as late as March 3, 1982 he had promised, in writing, to retain the thirty-ninth lieutenant's position. The manager, in his testimony, equivocated as to whether he authorized the one-day demotion and repromotion device used

to eliminate the first lieutenant's position, stating that this was "probably done with my authority, if it was done." Thus, there was ample reason for the trial court to conclude that the demotion-repromotion method used to eliminate the two lieutenant's positions had not been carried out pursuant to a planned reorganization but rather was hastily concocted and not accomplished with the authorization of the appointing authority. As we stated in *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, "an appellate court should not substitute its judgment for that of the trial court where there exists, as in this case, competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." We must, therefore, reverse the judgment of the court of appeals on this issue.

This appeal also presents the fundamental question of whether the city should have been required to comply with R.C. 124.37 under the circumstances of the instant case. The city argued below that R.C. 124.37 should not require the layoff of the least senior police officer if a layoff is not necessary when, as it is claimed here, positions are abolished by attrition for efficiency reasons rather than for lack of funds or work. The court of appeals apparently accepted this argument in concluding that no prejudice to appellants resulted from the city's failure to comply with R.C. 124.37 when abolishing the two lieutenant's positions.

The city attempts to characterize the purpose of the reduction in force in the instant case as reorganization for efficiency in an effort to avoid the requirements of R.C. 124.37. The trial court found, however, that these positions were abolished for *lack of work.* Again, there is competent and credible evidence to support the trial court's finding, including the city manager's own testimony that the thirty-eighth and thirty-ninth lieutenant's positions were not needed.

Even the city concedes that R.C. 124.37 applies specifically to reductions in force on a police or fire department arising from lack of work, thus bringing this case squarely under the governance of this statute. R.C. 124.37 reads in pertinent part as follows:

"When it becomes necessary in a police or fire department, through lack of work or funds, or for causes other than those outlined in section 124.34 of the Revised Code, to reduce the force in such department, the youngest employee in point of service shall be first laid off. * * *

"When a position above the rank of patrolman in the police department and above the rank of regular fireman in the fire department is abolished, and the incumbent has been permanently appointed, he shall be demoted to the next lower rank and the youngest officer in point of service in the next lower rank shall be demoted, and so on down until the youngest person in point of service has been reached, who shall be laid off."

The plain words of the statute make clear that where a city decides to abolish a higher ranking police position because of lack of work, there shall be a demotion of the incumbent accompanied by a series of additional

demotions in the lower ranks ultimately resulting in the layoff of the least senior member of the police department. It is further undisputed that the city did not comply with R.C. 124.37 in abolishing the two lieutenant's positions, for in neither case was the lowest ranking police officer with the least seniority laid off.

The purpose of the civil service system is to provide a "stable framework of public offices upon which a workable civil service system may be constructed" while "avoiding the traditional spoils system * * * and * * * providing a method of fair employee selection and promotion based upon merit and fitness." *McCarter* v. *Cincinnati* (1981), 3 Ohio App. 3d 244, 248. R.C. 124.37 provided the stable and predictable procedure to be followed when the city decided to abolish the higher ranking police positions for lack of work. The results of adherence to this procedure, layoffs, may be harsh in some instances, but appellants must accept those consequences and plan accordingly and only insist that the city play by the same rule.[2]

The machinations employed by the city in the instant case disrupted the stability and predictability of the civil service system on which appellants relied. Although the city expresses its concern for the seniority system, the demotion-repromotion shell game used to abolish the two lieutenant's positions was in contravention of R.C. 124.37 and adversely affected appellants' seniority rights by delaying or denying their promotions. In essence, the city, by abolishing these positions in an unlawful manner, was tinkering with the civil service promotional system as well as R.C. 124.37. The abolishment of a classified civil service position above the rank of patrolman in the police department for lack of work or funds, or for causes other than those outlined in R.C. 124.34, must be accomplished in conformance with R.C. 124.37. Because the city did not accomplish the abolishment of these two lieutenant's positions in accordance with R.C. 124.37, the elimination of these positions was unlawful and therefore void.[3]

The final question presented for our review is whether the trial court's award of back pay and seniority was contrary to law. Appellants argue that when civil service promotions are unlawfully delayed or denied by a

---

[2] Further, we question the city's assertion that it should have discretion to abolish police positions for efficiency reasons without regard for the procedure mandated by R.C. 124.37. "Efficiency" is a very broad term. Certainly, it is "efficient" to abolish a position if there is a lack of work for the employee in that position, and reductions in force due to lack of funds could be characterized as reductions for "economic efficiency" reasons. Under the guise of efficiency, cities could effectively read R.C. 124.37 out of the code.

[3] Additionally we observe that the city's own charter obligated it to act in accordance with the applicable state civil service law when abolishing positions in the police department. Section 3, Article V of the Cincinnati Charter provides that the city council shall have "no power to modify the provisions of the laws of the state of Ohio now or hereafter in effect relating to the civil service and civil service commissions. * * *"

municipality, an award of back pay and benefits is a proper remedy. The appellee city contends that such an award is contrary to *State, ex rel. Gibbons, v. Cleveland* (1984), 9 Ohio St. 3d 216, in which we held that there is no legal right to back pay or benefits before an appointment has occurred, regardless of the reasons for failure to appoint.

This issue was recently before the court in a similar case, also arising from the city of Cincinnati. In *Morgan v. Cincinnati* (1986), 25 Ohio St. 3d 285, decided today, the appellants, classified civil service employees and members of the city's police division, alleged that they were entitled to recover back pay and seniority as a result of the city's unlawful delay of their promotions to the rank of captain, particularly where the city's unlawful actions were undertaken in bad faith.

In *Morgan, supra,* this court carefully distinguished both the legal and factual bases underlying *Gibbons* and concluded that *Gibbons* did not control those situations in which "the municipality actively violated state civil service laws by impermissibly delaying the competitive examination beyond the time required by R.C. 124.44. In such a case, it would be wholly inequitable to deny an employee the pay and seniority he would have been entitled to had the city not acted in contravention of state law." *Morgan, supra,* at 289.

The facts of the instant case are very similar to those in *Morgan.* Here, the city actively violated state civil service law by abolishing two police lieutenant's positions in a manner contrary to R.C. 124.37. The result, intent aside, as in *Morgan,* was the impermissible delay or denial of appellants' promotions. The syllabus in *Morgan* states as follows:

"Where a civil service employee shows that a promotion to which he was entitled was delayed as the result of actions taken by a municipality in violation of R.C. 124.44, that employee is entitled to recover back pay and seniority for the period of the delay."

We find our holding in *Morgan* to be controlling in the instant case. Appellants have shown that the promotions to which they were entitled were delayed or denied as a result of actions taken by the city in violation of R.C. 124.37. Therefore, the trial court's award of back pay and seniority was proper. As we stated in *Morgan, supra,* at 289, "[t]o hold otherwise would permit municipalities to avoid their legal responsibilities without regard to damages suffered by their employees."

For the foregoing reasons, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

HOLMES, J., concurs in judgment.

LOCHER and WRIGHT, JJ., dissent.

HOLMES, J., concurring in judgment. I concur in the judgment here, in that under the facts presented in this case I am able to apply the same considerations that I set forth in my concurrence in *Morgan* v. *Cincinnati* (1986), 25 Ohio St. 3d 285. The basic law to be followed is that which was pronounced in *State, ex rel. Gibbons,* v. *Cleveland* (1984), 9 Ohio St. 3d 216, 217, which denies any recovery of back pay to an employee "regardless of the reasons for the failure to appoint." However, as I stated in *Morgan,* there need be reasonable exceptions spelled out to such general rule. I stated that the reasonable exceptions would be where there is a finding of a refusal to appoint based upon bad faith of the city, or a showing of a conscious intentional violation of the civil service laws.

In *Morgan,* bad faith was alleged and shown; therefore, I agreed with the majority that an exception to the general rule existed. Here, there is no specific allegation of bad faith as such. However, the trial court found such procedures to be "an unnecessary budgetary contrivance." Furthermore, the proof at trial and the specific findings of fact and conclusions of law of the trial court demonstrate that the city, in its maneuvering of the officers by way of demotions and promotions, was consciously and knowingly attempting to create the desired result in certain promotions, which procedures were contrary to the civil service laws of Ohio. This conscious effort at "contrivance" was clearly intentional and occurred over several years.

Therefore, I must conclude that the criteria which I believe to be reasonably applicable to these types of cases are present here, and would find that an exception to *Gibbons* is available, and thus a claim for back pay and benefits would not be barred.

LOCHER, J., dissenting. I am compelled to dissent based upon the reasons set forth in my dissent in *Morgan* v. *Cincinnati* (1986), 25 Ohio St. 3d 285.

In addition, in *Morgan,* the record clearly showed that the municipality acted in bad faith. In the instant action, no allegations of bad faith or actual malice were made and no proof of bad faith or actual malice was presented. Therefore, absent a finding of bad faith or actual malice, I would bar the claim for back pay and benefits in the instant case based upon our holding in *State, ex rel. Gibbons,* v. *Cleveland* (1984), 9 Ohio St. 3d 216. Accordingly, I respectfully dissent.

WRIGHT, J., concurs with the foregoing dissenting opinion.