DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} John Kim was charged with speeding. He pleaded not guilty and, following a bench trial, the trial court found him guilty. Mr. Kim has appealed and argued that the trial court erred when it denied his motion for acquittal and found him guilty. This Court affirms because there was sufficient evidence presented to show the reliability of the LTI 20/20 laser speed measuring device, the officer was qualified to use it, and the trial court's decision was not against the manifest weight of the evidence.
 FACTS {¶ 2} Ohio State Highway Patrol Trooper Robert Van Dyke was sitting along Interstate 76/77 in Akron watching for speeding traffic. In this area, the posted speed limit is 55 miles per hour. Trooper Van Dyke was using a laser speed measuring device, the LTI 20/20, as well as his own visual observations, to measure the speed of oncoming traffic. When he observed Mr. *Page 2 
Kim's SUV, he visually estimated its speed to be 80 miles per hour. He then pointed the LTI 20/20 at Mr. Kim's SUV, and the device registered 79 miles per hour. Trooper Van Dyke stopped Mr. Kim and issued him a speeding citation.
 {¶ 3} Mr. Kim entered a not guilty plea. During his bench trial, Mr. Kim challenged the reliability of the LTI 20/20 and Trooper Van Dyke's experience using it. The State asked the court to take judicial notice of an earlier Akron Municipal Court decision in State v. Campbell, Case No. 92TRD203588, that found the LTI 20/20 to be reliable. Following a recess for the trial court to review the decision, the trial court found Mr. Kim guilty of speeding.
 SUFFICIENCY OF THE EVIDENCE {¶ 4} Mr. Kim's first assignment of error is that his conviction is not supported by sufficient evidence. Specifically, he has challenged the reliability of the LTI 20/20 laser gun and the evidence of Trooper Van Dyke's qualifications to operate it.
 {¶ 5} Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St.3d 380, 386 (1997). This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average fact finder of Mr. Kim's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus (1991).
 JUDICIAL NOTICE {¶ 6} Rule 201 of the Ohio Rules of Evidence governs judicial notice of adjudicative facts. This Rule works in conjunction with Rule 44.1 of the Ohio Rules of Civil Procedure to guide a court in taking judicial notice. This Court looks to Rule 44.1 even though Mr. Kim was charged with a traffic offense and therefore subject to the Ohio Traffic Rules. Rule 20 of the Ohio Traffic Rules provides that, if no specific procedure is set forth in the Traffic Rules, the *Page 3 
Ohio Rules of Criminal Procedure apply. Rule 27 of the Ohio Rules of Criminal Procedure provides that the judicial notice provisions of Civil Rule 44.1 apply in criminal cases. Accordingly, our analysis is guided by Evidence Rule 201 and Civil Rule 44.1. In particular, Rule 44.1(A)(1) authorizes a court to take judicial notice of the decisional law of this state.
 {¶ 7} In State v. Miko, 9th Dist. No. 07CA0018-M, 2008-Ohio-1991, ¶ 12, this Court laid out a road map for trial courts to follow in taking judicial notice of the reliability of an electronic speed measuring device. "A trial court may take judicial notice of the scientific accuracy of a speed measuring device under Rule 201(B)(2) if it has determined in an earlier case, based on expert testimony in that earlier case, that the particular speed measuring device is scientifically accurate." The opinion in the case the trial court inMiko relied on did not state that the court had heard expert testimony on the reliability of the LTI 20/20. In this case, however, the situation is different.
 {¶ 8} Before the trial started in this case, the prosecutor asked the trial court to take judicial notice of an earlier Akron Municipal Court decision, State v. Joseph Campbell, Case No. 92TRD203588. The prosecutor advised the judge — a visiting Judge from the Barberton Municipal Court — that the court in Campbell had found the LTI 20/20 to be reliable based on the testimony of an expert witness and a trooper. Defense counsel argued that Campbell involved a radar device rather than a laser device. The judge commented that he had found the LTI 20/20 to be reliable in the Barberton Municipal Court and that he believed he could consider his decision in Akron Municipal Court. Defense counsel disagreed and argued that the decision had to be from the same trial court or from the Court of Appeals with jurisdiction over the trial court. Defense counsel concluded that, "if the Akron Municipal Court hasn't [taken judicial notice], the Court cannot take judicial notice of some other court's findings." The attorneys again disagreed *Page 4 
about whether Campbell dealt with a radar or laser device, and the judge ended the discussion by saying that he would read the decision and make sure it applied to the same device used in Mr. Kim's case. The parties agreed to proceed on that basis.
 {¶ 9} At the conclusion of the trial, the judge asked the prosecutor to provide him with a copy of Campbell. The judge said he would read the decision during a recess. The trial court then found Mr. Kim guilty.
 {¶ 10} While the trial court record does not contain a copy ofCampbell — and there is no requirement in Rule 44.1 or Rule 201 that a copy be included in the record — the State attached a copy to its brief on appeal. This Court takes judicial notice of this decision. As noted above, Rule 44.1(A)(1) of the Ohio Rules of Civil Procedure provides that "[j]udicial notice shall be taken . . . of the decisional . . . law of this state."
 {¶ 11} The Ohio Supreme Court has taken judicial notice of trial court decisions in a number of cases, including Morgan v. City ofCincinnati, 25 Ohio St.3d 285, 288 (1986). In Morgan, the Court discussed the parties' reliance on findings made in a trial court decision in another case. The other decision did not appear in the record, but allegations in the complaint and a joint stipulation both relied on the other trial court's finding. The Supreme Court held that it was "free to take judicial notice of the [other] trial court's finding of bad faith. . . ." Id. Accordingly, this Court takes judicial notice of the Akron Municipal Court's decision in State v.Campbell. See, also, State v. Gazdak, 11th Dist. No. 90-G-1611,1991 WL 206714 (Sep. 30, 1991) (applying Civil Rule 44.1 and Evidence Rule 201 in the context of an electronic speed measuring device).
 {¶ 12} After reviewing Campbell, this Court concludes that it does not suffer from the same faults as the case the trial court attempted to rely on in Miko. In Campbell, the trial court *Page 5 
heard the testimony of an expert witness whose qualifications were detailed at length in the opinion. Campbell at 1. The expert testified about how the LTI 20/20 works and demonstrated it for the court.Id. at 2. The expert concluded that the device was reliable. Id
 {¶ 13} The trial court in Campbell also admitted the results of a study conducted on the accuracy of the LTI 20/20. Id. That study, conducted by a professor at Michigan State University, was reviewed in some detail in the opinion. The study concluded that the device is accurate within a range of two miles per hour below the actual speed and one mile per hour above the actual speed. Id. Finally, the trial court heard testimony from the officer about his training and experience.Id. at 3. The trial court found "that LTI 20/20 is an accurate device to determine the speed of a moving vehicle." Id
 {¶ 14} Campbell thoroughly analyzed the function and use of the LTI 20/20 and found that it is scientifically accurate. The trial court properly took judicial notice of this finding to conclude that the device is scientifically accurate, and this Court does as well. To the extent that Mr. Kim's first assignment of error challenges the sufficiency of the evidence that the LTI 20/20 is accurate, it is overruled.
 {¶ 15} Mr. Kim also challenged the trooper's qualifications. Trooper Van Dyke testified that he had been a trooper for two years. During his initial training at the Academy, he was certified on using speed measuring devices, including the LTI 20/20. Just five months before stopping Mr. Kim, the trooper was recertified on using speed measuring devices, including the LTI 20/20. The State presented the trooper's certification as further proof of his training. This evidence was sufficient to prove Trooper Van Dyke was qualified to operate the LTI 20/20. *Page 6 
 {¶ 16} Mr. Kim has argued that Trooper Van Dyke was not qualified because he did not know the meaning of the initials "LTI." Notwithstanding this lack of knowledge, the evidence was sufficient to establish that Trooper Van Dyke was qualified.
 {¶ 17} The trial court properly took judicial notice of the reliability of the LTI 20/20 laser speed measuring device, and the State presented sufficient evidence of the reliability of the device and Trooper Van Dyke's qualifications and experience with it. Having determined that there was sufficient evidence based on Trooper Van Dyke's use of the LTI 20/20, this Court does not need to address Mr. Kim's argument that the trooper's visual estimate was insufficient to prove his guilt. Accordingly, Mr. Kim's first assignment of error is overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 18} Mr. Kim's second assignment of error is that his conviction is against the manifest weight of the evidence. He has incorporated the same arguments about judicial notice and the trooper's qualifications that this Court has already reviewed. He has also argued that the trial court in Campbell could not have considered the LTI 20/20 because it was decided in 1992. His argument concludes with the question, "Was the LTI 20/20 even on the market then?"
 {¶ 19} When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten, 33 Ohio App.3d 339, 340
(1986). Mr. Kim has presented no argument in support of this assignment of error, other than incorporating his previous arguments. This Court has reviewed the record and concludes that the trier of fact did not lose his way in finding Mr. Kim guilty of speeding. *Page 7 
 {¶ 20} Mr. Kim expressed concern that Campbell could not have addressed the LTI 20/20 because it was decided in 1992, perhaps before the LTI 20/20 even appeared on the market. Our review ofCampbell, as outlined above, leaves no doubt that the decision addressed the same unit as is at issue in this case.
 {¶ 21} Based on a review of all the evidence, this Court cannot say that the trial court lost its way and created a manifest miscarriage of justice in finding Mr. Kim guilty of speeding. Mr. Kim's second assignment of error is overruled.
 CONCLUSION {¶ 22} Mr. Kim's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. The trial court properly took judicial notice of the accuracy and reliability of the LTI 20/20. The State presented sufficient evidence that the trooper was qualified to operate the device. The judgment of the Akron Municipal Court is affirmed.
 {¶ 23} In addition to resolving Mr. Kim's appeal, this decision is significant for another reason. Courts within the Ninth District Court of Appeals may rely on this decision to conclude that the LTI 20/20 laser speed measuring device is scientifically accurate.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 8 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 SLABY, J. MOORE, P. J. CONCUR *Page 1