[Cite as *Cleveland Fire Fighters, Local 93 of the I.A.F.F. v. Cleveland*, 2020-Ohio-4751.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CLEVELAND FIRE FIGHTERS,
LOCAL 93 OF THE I.A.F.F.,                  :

      Relator-Appellant,              :

                                   No. 109136

      v.                              :

CITY OF CLEVELAND,                         :

      Respondent-Appellee.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 1, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-14-823955

---

***Appearances:***

Diemert & Associates Co., L.P.A., Joseph W. Diemert, Jr., Thomas M. Hanculak, and Mark V. Guidetti, *for appellant.*

Zashin & Rich Co., L.P.A., Jon M. Dileno, and Jessi L. Ziska; Barbara Langhenry, Cleveland Director of Law, and William Menzalora, Assistant Director of Law, *for appellee.*

LARRY A. JONES, SR., J.:

{¶ 1} In this appeal, relator-appellant, Association of Cleveland Fire Fighters, Local 93 of the I.A.F.F. ("the Union" or "Local 93"), appeals from two

September 24, 2019 trial court orders: the first, its "judgment entry and opinion" disposing of the parties' motions for summary judgment, and the second, its "order issuing writ." For the reasons that follow, we affirm.

## Procedural and Factual Background

{¶ 2} This case was initiated by the Union in March 2014, when it challenged respondent-appellee's, the city of Cleveland, use of a noncompetitive exam to fill vacancies in the city's division of fire. The vacancies were for the high-level ranks of battalion chief and assistant chief. Historically, those positions were filled by applicants who took a competitive, rather than a noncompetitive, exam. In its complaint, the Union sought a declaratory judgment and injunctive relief; it also filed for a temporary restraining order and preliminary injunction — it sought to enjoin the city from administering the noncompetitive exam. In April 2014, the trial court dismissed the case on the ground that it lacked jurisdiction; Local 93 appealed and the city cross-appealed.

{¶ 3} From January 2015 through March 2015, the city promoted six captains to battalion chief and one battalion chief to assistant chief through the noncompetitive exam process — a process the city contends was proper because Local 93 did not seek a stay of execution pending the outcome of the appeal. In April 2015, this court reversed the trial court's judgment dismissing the Union's case. *Assn. of Cleveland Firefighters v. Cleveland*, 2015-Ohio-1538, 31 N.E.3d 1285, ¶ 1 (8th Dist.).

{¶ 4} On remand, in August 2015, the trial court granted Local 93's request for injunctive relief and prohibited the city from making any further promotions through the noncompetitive process; it ordered the city to "maintain the status quo."

{¶ 5} Thereafter, Local 93 was permitted to file an amended complaint, which included a writ of mandamus. In its writ, the Union requested that the city

> [i]mmediately administer competitive examinations, certify eligibility lists which would expire on July 2016, and make promotional appointments therefrom to fill (through the competitive promotional process) all vacancies created since the expiration of the last certified civil service eligibility list as well as all vacancies which are created during the life of the eligibility list certified through the competitive promotional process.

{¶ 6} The parties filed motions for summary judgment, and in September 2016, the trial court dismissed the case, and the Union appealed again. In 2017, this court reversed the trial court a second time, and remanded the case to the trial court to consider the case on its merits. *Assn. of Cleveland Firefighters Local 93 I.A.F.F. v. Cleveland*, 8th Dist. Cuyahoga No. 105033, 2017-Ohio-6887.

{¶ 7} On remand for a second time, and as instructed by this court, the trial court ruled on the parties' motions for summary judgment. The court granted Local 93's declaratory judgment claim in part, and declared that the noncompetitive process the city used in 2014 was unlawful. However, the trial court denied Local 93's request for a declaratory judgment that all current assistant chief and battalion chief vacancies as well as any future vacancies be filled through the competitive exam process. Further, the trial court denied the city's

motion for summary judgment on the Union's request in its writ that the city immediately administer competitive exams, and allowed the parties to submit additional briefing on that issue. In its supplemental briefing, the Union proposed a promotional process, which was a revised proposal to the one previously advocated for by the Union. The Union also sought, for the first time, back pay and other benefits for those who would be promoted subject to the court's order (i.e., those who were not promoted because of the city's noncompetitive testing system).

{¶ 8} On September 24, 2019, the trial court issued the two orders that are the subject of this appeal. In its judgment entry and opinion, the trial court stated that Local 93 "possesses a clear legal right to have all current vacancies in the Assistant Chief and Battalion Chief ranks filled by competitive exam." Likewise, the court found that the city has a "corresponding legal duty to administer a competitive exam to fill all current vacancies for the position of Assistant Chief and Battalion Chief and that [Local 93] has no adequate remedy in the ordinary course of law."

{¶ 9} However, the trial court denied Local 93's request for back pay and benefits, finding that it failed to establish the amount of damages with certainty, as required by law. The court also denied Local 93's request for attorney fees because it did not find the city's conduct to be "bad faith, vexatious, wanton, obdurate, or oppressive." The trial court further found that there was no "clear legal right to

negatively affect the position of the five captains[1] the City promoted to Battalion

Chief during the course of the litigation."

{¶ 10} The writ order required the following of the city:

> To immediately administer competitive examinations, certify eligibility lists to restore the promotional cycle, and make promotional appointments therefrom to fill all current vacancies in the Assistant Chief and Battalion Chief ranks of the Division of Fire within six months of this order.

{¶ 11} The Union filed this appeal, raising the following three assignments

of error for our review:

> I. The trial court erred by failing to order two separate civil service promotional examinations — one for the battalion chief rank and one for the assistant chief rank — and failing to divide the resultant eligibility lists by the qualified candidates in each promotional period.

> II. The trial court erred by failing to award back pay, seniority and other benefits to the eventual appointees.

> III. The trial court erred by failing to award attorneys' fees to Local 93.

## Law and Analysis

{¶ 12} When reviewing a trial court's decision regarding a summary

judgment motion, an appellate court conducts a de novo review. *Doe v. Shaffer*,

90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000); *Grafton v. Ohio Edison Co.*, 77

Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Thus, we must independently review

the record to determine if summary judgment was appropriate and need not defer

to the trial court's decision. *Brown v. Scioto Bd. of Commrs.*, 87 Ohio App.3d 704,

711, 622 N.E.2d 1153 (4th Dist.1993); *Morehead v. Conley*, 75 Ohio App.3d 409,

---

[1]As mentioned, six captains were promoted to battalion chief, but one since retired, leaving five at issue.

411-12, 599 N.E.2d 786 (4th Dist.1991). In determining whether a trial court properly granted a summary judgment motion, an appellate court must review the standard for granting a summary judgment motion as set forth in Civ.R. 56, as well as the applicable law.

{¶ 13} Under its first assignment of error, the Union contends that the two subject orders issued by the trial court create an inconsistency and, therefore, we should remand this case to the trial court so that it can do the following:

> Order the City to abide by the Ohio Revised Code's mandatory competitive promotional examination procedure, clarify the specific components of Local 93's proposed writ that the Trial Court rejects, require two competitive promotional exams (1 for each rank) be conducted, with the test results divided into two categories based on test takers' eligibility to fill vacancies for the two promotional periods involved, and allow the five already-promoted individuals to remain in their positions but without accumulating seniority or [being] eligible for promotion without subsequent competitive examination.

{¶ 14} According to Local 93, although the trial court granted its writ of mandamus, the court "fail[ed] to set forth the proper procedure that the City should follow." The Union maintains that the lack of specificity is particularly troubling in this case because "[t]he City's past actions demonstrate its unwillingness to follow Chapter 124 of the Ohio Revised Code absent a clear and explicit court order."

{¶ 15} Local 93 points to the following in the trial court's orders as being unclear or contradictory: (1) the judgment entry and opinion states that the city has a "corresponding duty to administer a competitive *exam* to fill all current vacancies for the positions of Assistant Chief and Battalion Chief"; (2) but the

judgment also states that the court "does not find a clear legal right and corresponding duty supporting the promotion process identified in [Local 93's] *proposed* writ"; and (3) the writ "indicates a somewhat different determination" than the judgment order because it orders the city to "immediately administer competitive *examinations*" — which is different from the singular "exam" above-referenced in the judgment entry. (All emphases added.)

{¶ 16} Upon review, we do not find that the trial court's orders are ambiguous or unclear and, therefore, we find there is no need to remand this case for clarification. After determining that the Union has a "clear legal right to have all current vacancies in the Assistant Chief and Battalion Chief ranks filled by competitive exam," the judgment entry states that the court "will issue the subject writ by separate order." The writ order makes it clear what the city is to do: "immediately administer competitive examinations, certify eligibility lists to restore the promotional cycle, and make promotional appointments therefrom to fill all current vacancies in the Assistant Chief and Battalion Chief ranks of the Division of Fire within six months of this Order."

{¶ 17} We are not persuaded by Local 93's contention that the case should be remanded for clarification on whether the court's order means the city should administer the same exam for the two separate positions, or whether, as historically has been done, administer two exams, one for each respective position. In our view, the writ order makes it clear that two exams, one for each respective position, are to be administered.

{¶ 18} Further, the record indicates that that was the city's understanding as well: in its November 6, 2019 brief in opposition to the Union's motion to stay and set bond filed in the trial court, the city represented that it "has already begun its implementation of the Court's clear order, by preparing and presenting legislation for bids from testing companies to prepare two separate tests — one for Assistant Chiefs and one for Battalion Chiefs."

{¶ 19} We are likewise not persuaded by Local 93's contention that there is an inconsistency between the language in the trial court's stating that the vacancies for the assistant chief and battalion chief positions must be filled through the competitive exam process and the language stating that the court "does not find a clear legal right and corresponding duty supporting the promotion process identified in [Local 93's] *proposed* writ." (Emphasis added.) The "proposed writ" that the court referred to was the Union's proposal set forth in its summary judgment motion, which differed from what it originally proposed in its amended complaint. The court granted a writ, albeit not as the Union had revised its request. Moreover, the trial court detailed how the city was to proceed under the writ.

{¶ 20} In light of the above, the Union's first assignment of error is overruled.

{¶ 21} In its second assignment of error, Local 93 challenges the trial court's decision to deny its request for back pay and other benefits. In response, the city contends that the Union failed to request that relief in its original filing —

its 2015 writ (the Union requested the relief for the first time in its 2019 motion for summary judgment) — and that that failure was fatal to its request. The Union, on the other hand, maintains that it was not precluded from such a request because its 2015 amended complaint sought in its prayer for relief "any and all other relief, both legal and equitable that this Court is empowered to grant."

{¶ 22} Under Civ.R. 54(C), except in the cases of default judgments, the trial court may award damages other than those requested in the pleading. Specifically, the rule provides as follows:

> A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings.

Civ.R. 54(C).

{¶ 23} However, this case was a writ of mandamus. A writ of mandamus is "an extraordinary writ which may be issued only where relators *establish a clear legal right to the relief prayed for*; a clear legal duty upon respondents to perform the act requested; and that relators have no plain and adequate remedy in the ordinary course of the law." (Emphasis added.) *Morgan v. Cincinnati*, 25 Ohio St.3d 285, 496 N.E.2d 468 (1986), citing *State ex rel. Butler v. Demis*, 66 Ohio St.2d 123, 124, 420 N.E.2d 116 (1981). Notwithstanding that the Union failed to set forth a request for the specific relief it sought in its writ petition, for the reasons

that follow, we agree with the trial court's decision to deny Local 93 back pay and other benefits.

{¶ 24} In *State ex rel. Gibbons v. Cleveland*, 9 Ohio St.3d 216, 459 N.E.2d 892 (1984), the Ohio Supreme Court stated the rule for public employees' requests for back pay. In *Gibbons*, the relators, police officers, sought back pay after certain ordinances enacted by the city were declared invalid; the relators requested back pay for time during which the city acted in reliance on the ordinances. The Ohio Supreme Court held that a police officer "has no legal right to the salary and benefits incidental to a rank prior to his [or her] appointment to that rank, regardless of the reasons for the failure to make the appointment." (Quotations omitted.) *Id.* at 287. Two years later, the court created an exception to this holding in *Morgan*.

{¶ 25} In *Morgan*, the plaintiffs (Robert Morgan and Michael Hines) were classified civil service employees and police officers for the city of Cincinnati. Morgan and Hines sued the city, alleging that each had been delayed in his promotion to the rank of police captain due to actions taken knowingly and in bad faith by the city's safety director. Both sought restoration of lost seniority and back pay.

{¶ 26} The parties stipulated to the following relevant facts. On November 8, 1975, a vacancy in the rank of police captain was created as the result of the incumbent's resignation. Four days later, a request to fill the vacancy was transmitted to the city's safety director for forwarding to the civil service

commission. At the time, there was no existing eligible list from which to make a promotion to the vacant position. Under R.C. 124.44, therefore, the civil service commission would have been required to hold a competitive examination for the rank of captain within 60 days of the vacancy, or by January 7, 1976. When the request to fill the vacancy was made, Morgan and Hines each had sufficient time in grade as police lieutenants to qualify to take a timely administered competitive promotional examination for the rank of police captain.

{¶ 27} Notwithstanding the above, on November 12, 1975, two police lieutenants who did not have sufficient time in grade to qualify sent a joint request to delay the examination until after March 10, 1976, so that they could establish the requisite time in grade requirements. The competitive examination was delayed until March 18, 1976, or 131 days after the vacancy occurred. As a result of the delay, the two previously ineligible lieutenants became eligible to take the exam, along with Morgan and Hines (and others) who would have been eligible to take the exam if it had been timely administered.

{¶ 28} On May 27, 1976, the civil service commission posted the promotional eligibility list that resulted from the delayed examination. Prior to that date, two additional vacancies had occurred in the rank of police captain, so there were three vacancies immediately available. Jeffrey Butler, one of the lieutenants who would have been ineligible to take a timely administered examination, ranked second on the eligibility list; plaintiff Morgan ranked fourth, and plaintiff Hines ranked fifth. Both plaintiffs were eventually promoted to the

rank of police captain as additional vacancies occurred. However, the parties stipulated to the following:

> Had the competitive promotional examination for the classification (rank) of Police Captain been administered within sixty (60) days of the vacancy created by the November 8, 1975 retirement * * * Jeffrey L. Butler [who placed second on the eligibility list] could not have been certified for promotion to the rank of Police Captain * * *.

> If plaintiff Morgan [who placed fourth on the eligibility list] had received promotion to the rank of Police Captain on May 30, 1976, the date Jeffrey L. Butler was promoted to the rank of Police Captain, he would have been entitled to increased earnings totalling [sic] * * * [$244.59] and his date of appointment as a Police Captain for seniority purposes would have been May 30, 1976. * * *

> If Plaintiff Hines had received promotion to the rank of Police Captain on July 8, 1976, the date Robert L. Morgan was promoted to the rank of Police Captain, he would have been entitled to increased earnings totalling [sic] * * * [$2,651.88] and his date of appointment as a Police Captain for seniority purposes would have been July 8, 1976 * * *.

*Id.* at 286.

{¶ 29} The trial and appellate courts found that even though the city's delay of testing constituted "bad faith," the Ohio Supreme Court's holding in *Gibbons*, 9 Ohio St.3d 216, 459 N.E.2d 892, precluded the plaintiffs from obtaining back pay and other benefits. *Morgan* at 287.

{¶ 30} On appeal to the Ohio Supreme Court, the *Morgan* court held that "where a civil service employee shows that a promotion to which he [or she] was entitled was delayed as the result of actions taken by a municipality in violation of R.C. 124.44, that employee is entitled to recover back pay and seniority for the period of delay." *Id.* at 289. The *Morgan* court stated, however, that, "*Gibbons* is entirely different from the case at bar." *Morgan* at *id.* Specifically, the court noted

that the city's actions in *Morgan* were in violation of state law and were found to be in bad faith. *Id.*

{¶ 31} We find the facts of this case to be more on par with *Gibbons* than *Morgan*. Specifically, there was no determination that the city was per se precluded from administering noncompetitive exams for the battalion chief and assistant chief positions. And some of the trial court's decisions seem to indicate that there is no such per se preclusion. For example, the trial court denied the Union's request for a permanent injunction prohibiting the use of noncompetitive exams. The court also denied the Union's request for a broad declaratory judgment that the vacancies for *all* the battalion chief and assistant chief police positions, including those yet to be created, be filled through the competitive civil service examination process.

{¶ 32} Local 93 also cites to two other Ohio Supreme Court cases in support of its request for back pay and other benefits: *State ex rel. Crockett v. Robinson*, 67 Ohio St.2d 363, 423 N.E.2d 1099 (1981), and *State ex rel. Dean v. Huddle*, 45 Ohio St.2d 234, 344 N.E.2d 138 (1976). We find *Crockett* and *Dean* distinguishable from this case. Specifically, they involve situations where the employee was reinstated after discharge because of the city's violation of the Ohio Revised Code (*Crockett*) or reinstated after illegally being laid off (*Dean*). Moreover, the employees in *Crockett* and *Dean* were able to prove with certainty that, but for the unlawful acts of their employers, they would have been the employees working in the respective positions; thus, their damages were

ascertainable with certainty. The trial court here found Local 93's request for back pay and other benefits lacking the requisite certainty and, therefore, denied the Union's request. We agree with the trial court's finding.

{¶ 33} In its decision denying the Union's request for back pay and other benefits, the trial court relied on the seminal case on this issue, *State ex rel. Bednar v. N. Canton*, 69 Ohio St.3d 278, 631 N.E.2d 621 (1994). In *Bednar*, the Ohio Supreme Court held that the relator "must first establish that the dismissal or denial of promotion was wrongful. * * * Then, the relator must prove a clear right to relief by establishing the amount due with certainty." *Id.* at 283, citing *State ex rel. Martin v. Columbus*, 58 Ohio St.2d 261, 389 N.E.2d 1123 (1979), and *Crockett*.

{¶ 34} The *Bednar* court did not define what "wrongful" means in this context. However, for the reasons discussed above, we do not find that the city's action in this case was "wrongful." But more importantly, we agree with the trial court's assessment that the Union's members did not establish with any certainty that the city's noncompetitive testing process denied any of the members a promotion. We note that this case is distinguishable from *Bednar*, where the employee had already taken a competitive examination, was scored, and an eligibility list was created. *Id.* at 278. In contrast, here, the Union was asking the trial court to find that had the city administered a competitive examination in 2014, and if members had taken it, they would have scored high enough to earn a promotion. That type of speculation does not fulfill the requirement that a relator

"prove a clear right to relief by establishing the amount due with certainty." *Bednar* at *id.*

{¶ 35} In light of the above, we find no error in the trial court's denial of Local 93's request for back pay and other benefits. The second assignment of error is therefore overruled.

{¶ 36} In its final assignment of error, the Union challenges the trial court's decision to deny its request for attorney fees.

{¶ 37} In Ohio, the general rule is that, absent a statutory provision allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith. *State ex rel. Kabatek v. Stackhouse*, 6 Ohio St.3d 55, 55-56, 451 N.E.2d 248 (1983). Bad faith can involve conduct during litigation, but can also involve conduct giving rise to a party's claim. *See, e.g., Brooks v. Dayton*, 70 Ohio App.3d 722, 723, 591 N.E.2d 1352 (2d Dist.1990). Trial court decisions on attorney fees are within the court's sound discretion and are reviewed for abuse of discretion. *SST Bearing Corp. v. Twin City Fan Cos., Ltd.*, 1st Dist. Hamilton No. C-110611, 2012-Ohio-2490, ¶ 29.

{¶ 38} The trial court in this case found "no bad faith, vexatious, wanton, obdurate, or oppressive conduct necessary to allow attorney fees and therefore decline[d] to issue a writ ordering payment of attorney's fees * * *." We decline to disturb the court's judgment. Deferring to the trial court's judgment, as we must under an abuse-of-discretion review, we do not find the court's decision denying

the Union's request for attorney fees was unreasonable or arbitrary. For the reasons discussed earlier in this opinion, we agree with the trial court that the city's actions in this case did not amount to bad faith.

{¶ 39} In light of the above, the third assignment of error is without merit and is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., JUDGE

ANITA LASTER MAYS, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR